HENRY S. ANDERSON, Respondent, *v.* EDWARD T. DICKINSON, Appellant.

*Contract for the sale of foreign nursery stock — commissions — duration and scope of the contract — the annual shipping season — quantum meruit.*

A contract between a nurseryman engaged in business in this country and a nurseryman engaged in business in France, for the sale in the United States of the latter's nursery stock upon commissions to be paid on final settlement, dated August 25, 1886, and stated to be "for term of one year from date, or until the business of the season of 1886–1887 is wholly closed," construed in connection with the dealings of the parties and the usages of the business, and *held*, to cover only transactions on orders for foreign nursery stock to be delivered during the shipping season of 1886–1887 (which was shown to begin in the fall and continue through the winter, and until about April first, depending somewhat upon the weather), and not to cover orders sent after the close of the shipping season in the spring of 1887, to be filled in the shipping season of 1887–1888, so as to give a right, under the contract, to commissions on such orders.

Under a complaint which states only a cause of action under a written contract a recovery cannot be had upon a *quantum meruit*, for services not rendered under the contract.

APPEAL by the defendant, Edward T. Dickinson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the

office of the clerk of Cayuga county on the 18th day of July, 1892, upon the report of a referee.

*Herbert Green,* for the appellant.

*F. D. Wright,* for the respondent.

LEWIS, J. :

The action was brought to recover commissions claimed by the plaintiff to be due him for services rendered under a written contract made by the parties, and dated August 25, 1886. The defendant is a resident of Chatenay, France, and is engaged in the business of importing to the United States foreign nursery stock, seeds, pits, etc. Plaintiff is a nurseryman, residing in the town of Springport, N. Y. A Doctor Farley had, for a number of years prior to his death, acted as the defendant's agent in this country, under contracts similar in terms to the one in question. Plaintiff was interested with him in the business, and had assisted in performing the doctor's contracts with the defendant; he was at the same time engaged upon his own account in dealing in nursery stock.

Doctor Farley died on the 24th or 25th of September, 1885, leaving a contract with the defendant for that year partially unperformed. Plaintiff notified the defendant of the doctor's death, and proposed to act as the defendant's agent in carrying out the contract, to which the defendant assented. Negotiations were thereafter entered into between the parties looking to the plaintiff's acting as defendant's agent for the following year.

Some correspondence passed between them, but no definite arrangements were made until the defendant visited this country in the summer of 1886, when the terms of the contract which is the basis of this action were agreed upon, and a written contract, the substance of which is as follows, was entered into between the parties : Dickinson agreed to furnish stock to fill the orders which Anderson might send him at prices that compare favorably with those of leading French houses, and to pack the same in proper manner.

Then follow provisions as to the preparation of catalogues and publishing the same, and that the expense shall be borne equally by the parties; and Anderson agreed to send to Dickinson all orders

sent to him, and all which he might procure for all kinds of foreign nursery stock, seeds and pits during the continuance of the contract. The terms of payment for stock shall generally be cash, but to parties whose references are satisfactory the terms may be one-half cash in November and one-half immediately on receipt of goods, and in a few cases, from parties of unquestioned financial responsibility, if. thought advisable, time of payment for the total amount may be extended to June first, but not later.

Anderson is to make collections and settlements with all parties in the United States for stock sent to them by Dickinson, and if it should happen, by failure of any of the customers to pay for the goods ordered, that there should be a loss, it should be borne equally by the parties. In consideration of Anderson's discharging all the minor conditions of the agreement Dickinson agreed to allow and pay him a commission of ten per cent on net value of goods on all orders that he may receive from him or that he may receive direct from customers, the same as if forwarded through Anderson. Commissions are to be paid to Anderson at the time of final settlement. Anderson is to forward to the defendant all moneys as soon as collected from the customers. The contract provides that a final settlement between the parties is expected to be reached by August first, sooner if possible. And then follows a provision to the effect that if in making settlements with customers a loss of twenty per cent on the net price of goods is sustained, Anderson is to have no commissions. The last provision of the contract is as follows : " This agreement is for term of one year from date, or until the business of the season of 1886–1887 is wholly closed up." The contract is dated Chatenay, 25th August, 1886.

The manner of conducting the business was as follows : Shipments of stocks commenced in the fall and continued on through the winter and until about the first of April, the time for commencing and closing shipments depending somewhat upon the conditions of the weather. Both parties testified that the business season in the nursery business is understood to be from the commencement to the close of the shipping season. Soliciting orders for the following year was commenced at the close of the shipping season and continued on into the shipping season following.

The plaintiff, after the close of the shipping season under the Farley contract in the spring of 1886, assuming and expecting that he would be able to make arrangements with the defendant to act as his agent, solicited orders and forwarded them to the defendant. The defendant arrived in this country about the first of June, and negotiations were carried on looking to the making of the contract in question.

The plaintiff had failed to remit moneys collected for the defendant under the Farley contract, and was indebted to him in a considerable sum of money, and this fact delayed the consummation and execution of the contract. The plaintiff testified that he continued after the close of the shipping season in the spring of 1887, to solicit orders for the defendant, and otherwise interested himself in the business, but he nowhere states that he was requested so to do by the defendant, except as it might be inferred by conversations between the parties about the business, and defendant delivering to plaintiff a price list for the next year. When these occurrences took place the defendant had not succeeded in collecting the money plaintiff owed him. The orders were not sent by plaintiff to the defendant; they were sent by the customers. The last order plaintiff sent personally was on the 17th day of March, 1887.

The defendant came to this country again in the summer of 1887 and attempted to effect a settlement with the plaintiff for the business of the prior year. The plaintiff had failed to pay over all the moneys collected for defendant, and was indebted upon that year's business to the amount of $2,700. The defendant, failing to obtain the amount due him, placed the claim in the hands of an attorney and declined to enter into a contract with the plaintiff for another year and returned to his home in France.

It is the plaintiff's contention that under the contract he was entitled to commissions upon the orders sent to the defendant after the close of the shipping season in the spring of 1887, and which were to be filled during the shipping season of 1887 and 1888. The defendant's contention is that the plaintiff was only entitled to commissions upon the orders which were forwarded to be filled during the shipping season of 1886 and 1887. The referee to whom the action was referred reported in favor of the plaintiff and assessed his damages at $770.04.

FIFTH DEPARTMENT, OCTOBER TERM, 1893.        [Vol. 72.

No mention was made by the plaintiff during the negotiations for the settlement of the business of 1886–1887, that he claimed to be entitled to commissions for the orders sent by customers after the close of the shipping season of the spring of 1887. Plaintiff made out and presented to the defendant an account for commissions, which was dated July 19, 1887, and which was headed "Statement, season 1886 and 1887." All of the items of this account were for orders sent and which had been filled during the shipping season of 1886–1887. A large proportion of the orders for which commissions are sought to be recovered in this action were forwarded before the date of this account, and yet no mention is made of them in it. Plaintiff had stated in one of his letters to the defendant that "there were a few points in the contract that we both seemed to have overlooked." Upon being interrogated by the defendant as to what he referred to, he declined to inform him; being asked to explain the letter when he was upon the stand as a witness, he first stated: "I referred to commissions due in case I did not make a new contract with him;" but when farther interrogated upon the subject he replied, "There was one item besides what I have spoken of; that was where he charged me more in the invoice for stock I had ordered for myself than the price I was allowed to sell for to customers. I also think I had in mind this Baltimore order. I don't remember anything else." The matters last mentioned were manifestly not what he referred to in the letter, for the contract nowhere made mention of the prices at which the goods were to be sold, nor of any Baltimore orders. The contract contains provisions inconsistent with the construction given to it by the learned referee. It bore date, as we have seen, August 25, 1886, and if the plaintiff under it was entitled to recover commissions upon all orders forwarded prior to the 25th of August, 1887, as the contract provided for selling the goods on time, and in some cases the credit to be extended until the following June, it was manifestly impracticable to effect a settlement between the parties by the 1st day of August, 1887, as provided by the contract. A part of the duties of the plaintiff under the contract was to attend to the delivery of the goods shipped and to make collections and settlements with all the customers, and in case of failure of the customers ultimately to pay, plaintiff was to sustain one-half of the loss, so that it was impossible

to know by the time mentioned in the contract for a settlement whether the plaintiff had earned or was entitled to any commissions upon orders to be filled during the following season. Commissions were not earned upon the orders being forwarded. A large part of the work was to be done after the orders were sent before commissions were due, which was never done by the plaintiff, and yet he has been allowed full commissions on all the orders sent. The learned referee, as stated, construed the contract as entitling the plaintiff to commissions on all the orders sent after the close of the shipping season of 1886–1887, and before August 25, 1887. He construed the clause, " Or until the business of the season of 1886–1887 is wholly closed up," as intended to give to the parties such time as might be necessary after the close of the term definitely mentioned, to wit, August 25, 1887, for winding up the business that had been done during the year intervening between the 25th day of August, 1886, and August 25, 1887. We are unable to agree with this construction of the contract, reading it in the light shed upon it by the evidence, as it is our duty to do. (*Smith* v. *Clews*, 114 N. Y. 190 ; *Atkinson* v. *Truesdell*, 127 id. 230 ; *Woolsey* v. *Funke*, 121 id. 87 ; 1 Greenl. Ev. 363, 374, 375.)

The contract, we think, should be construed as entitling the plaintiff to commissions only upon the orders secured and filled during the time intervening between the close of the shipping season of 1885–1886, and the close of the season of 1886–1887. The object of the disjunctive clause mentioned was to provide for the termination of the contract when the year's business was settled and finally closed, whether that should occur on the 25th of August, 1887, or at any time either before or after that date. This construction, we believe, is in accordance with the understanding of the parties when they made their agreement, and as they understood it while it was being performed, and such a construction works justice between them.

It is suggested by the plaintiff's counsel that the defendant's conduct shows that he had the same understanding of the contract as the plaintiff did, and he asks if not, why was defendant making inquiries of the customers as to whether their orders were sent before or after the 25th of August, 1887 ?

An obvious answer to this question is, that in view of the claim

made by plaintiff, such information might be important, depending upon the view the courts should take of the contract. If plaintiff's construction prevailed it was important that defendant should know the extent of his liability. If the court should construe the contract according to the defendant's contention the inquiries would then be of no avail.

Plaintiff claims that he rendered services in procuring orders to be filled in the fall, winter and spring of 1887 and 1888, for which he should receive compensation in this action. That depends upon whether they were performed under this written contract, for the cause of action stated in the complaint is under that contract, and he cannot, under such a complaint, recover upon a *quantum meruit* for services not performed under the contract.

. The plaintiff failed to make a case entitling him to recover. The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

Dwight, P. J., and Haight, J., concurred.

Judgment appealed from reversed and a new trial granted, with costs to abide the event.