ALFRED H. SMITH et al., Appellants, *v.* HENRY CLEWS, Impleaded, etc., Respondent.

Plaintiffs, who were diamond merchants, delivered to one M., a diamond broker, a pair of diamond ear-knobs, taking from him a receipt as follows: "Received from Alfred H. Smith & Co. * * * a pair of single stone diamond ear-knobs * * * on approval to show to my customers. Said knobs to be returned to said A. H. Smith & Co. on demand." M. sold the diamonds to defendant C. In an action to recover their possession plaintiff offered to show that the words "on approval" had a recognized meaning in the diamond trade well-known to M.; that they were understood not to confer a power of sale, but authority merely to show diamonds to a customer and report to the owner. This evidence was excluded. *Held*, error; that the receipt upon its face did not import authority to sell; that with the words "on approval" stricken out it would be a complete contract, giving M. simply authority "to show" and binding him "to return on demand;" that those words, as ordinarily interpreted, were neither inconsistent with the authority or the obligation; and as it was to be presumed they had some meaning to the parties, and as this meaning did not appear from the contract, oral evidence was competent to show the intent of the parties.

Evidence is always admissible to explain the meaning of terms used in any particular trade when their meaning is material to construe the contract; this rule extends to forms of expression as well as to single words.

Evidence of usage is also admissible to apply a written contract to the subject-matter of the action, to explain expressions used in a particular sense by particular persons as to particular subjects and to give effect to language in a contract as it was understood by those who made it.

Also, *held*, that C.'s title to the diamonds depended wholly on M.'s authority to sell, and he was bound by such limitation as the owner had placed upon M.'s possession, and unless authority to sell existed, C., although acting in entire good faith, obtained no title; hence it was of no consequence whether or not C. knew of the custom of the trade.

An unauthorized sale of personal property, although for a valuable consideration, and to one having no notice that another is the owner, vests no higher title in the vendee than was possessed by the vendor.

*Smith* v. *Clews* (105 N. Y. 283) distinguished.

(Argued March 21, 1889; decided April 23, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 9, 1888, which affirmed a judgment dismissing the complaint ordered at the Circuit.

The nature of the action and the facts are sufficiently stated in the opinion.

*Esek Cowen* for appellants. Evidence is always admissible to explain the meaning of terms used in any particular trade or occupation when their meaning becomes material in order to construe a contract ; and the principle on which the rule is founded extends to forms of expression as well as to single words. (*Dana* v. *Fiedler*, 12 N. Y. 46.) Evidence of usage is received as is any other parol evidence when a written contract is under consideration. (*Walls* v. *Bailey*, 49 N. Y. 470 ; *Boosman* v. *Johnston*, 12 Wend. 573 ; Whart. on Ev. [2d ed.] § 962 ; *Birch* v. *De Peyston*, 1 Stark. Cas. 167 ; *Ehle* v. *Chittenango Bk.*, 24 N. Y. 548 ; *Wachter* v. *Quenger*, 29 id. 548 ; *Bissell* v. *Campbell*, 54 id. 357 ; *Storey* v. *Soloman*, 6 Daly, 531 ; 71 N. Y. 420 ; *Coitt* v. *Commercial Ins. Co.*, 7 Johns. 385 ; *Astor* v. *Union Ins. Co.*, 7 Cow. 202.) Questions as to the meaning of particular words used in a special sense in a written instrument are for the jury. (*Pitney* v. *Glens Falls Ins. Co.*, 65 N. Y. 17.) Whether given words of a contract were used in an enlarged or restricted sense, that construction should be adopted which is most beneficial to the promisee. (*Hoffman* v. *Ætna Ins. Co.*, 32 N. Y. 405, 413 ; Coke on Litt. 183 ; *Mowatt* v. *Londesborough*, 3 El. & Bl. 307, 334, 335 ; *Gifford* v. *First Presby. Soc.*, 56 Barb. 114 ; *Marvin* v. *Stone*, 2 Cow. 781, 806 ; *Goodyear* v. *Ogden*, 4 Hill, 104 ; *Dawson* v. *Kittle*, Id. 107 ; *Hinton* v. *Locke*, 5 id. 437 ; *White* v. *Hayt*, 73 N. Y. 512.) Miers being an agent with a very special and limited authority, if he transcended such authority, his acts were void, and he could not convey a title even to a purchaser without notice. (*Gurreiro* v. *Peile*, 3 Barn. & Ald. 616 ; 2 Kent's Com. 625 ; Dunlop's Paley's Agency [ed. 1856] 212–220 ; *Gray* v. *Agnew*, 95 Ill. 315 ; *Barton* v. *Williams*, 5 Barn. & Ald. 395 ; Whart. on Agency, §§ 192, 194, 744 ; *Trudo* v. *Anderson*, 10 Mich. 357 ; *Taylor* v. *Plumer*, 3 Maul. & Sel. 562 ; Story on Agency, 113, § 78 ; *Delafield* v. *State of Ill.*, 26 Wend. 223 ; *Ives* v. *Davenport*, 3 Hill, 377.)

*Albert A. Abbott* for respondent. Evidence that the words "on approval," mentioned in the receipt, have a recognized "peculiar meaning" in the diamond trade was inadmissible. (*Harris* v. *Tumbridge*, 83 N. Y. 92; *Miller* v. *Burke*, 68 id. 615; *Silberman* v. *Clark*, 96 id. 522; *Union Trust Co.* v. *Whiton*, 97 id. 172.)

BROWN, J. This action was brought to recover the possession of two diamonds with their settings, constituting what is called, in the evidence, a pair of diamond ear-knobs.

The plaintiffs are dealers in diamonds having their place of business at No. 14 John street in New York city. On the 11th day of April, 1879, Borden W. Plumb, who was a diamond broker, introduced to Mr. Alfred H. Smith, one of the plaintiffs, one Elijah Miers, telling Smith that Miers thought that if he saw a pair of ear-knobs that suited him, he could sell them to Mr. Clews, and that he had brought him to the plaintiffs' store that he might see the assortment. Miers selected a pair which he said he thought would suit Mr. Clews, and it was then arranged that Smith should send them to him on the following day by Mr. Plumb.

Miers had, on two previous occasions, sold stones to Mr. Clews. On the first occasion he sold a pair for $300, which proving unsatisfactory were returned and another pair substituted in their place, of the value of $450.

On the day following the conversation at the store the diamonds were delivered to Plumb, who delivered them to Miers, taking from him at the time of the delivery a receipt, of which the following is a copy:

"NEW YORK, *April* 12, 1879.

"Received from Alfred H. Smith & Co., by their representative, B. W. Plumb, a pair of single stone diamond ear-knobs, 10⅛ carats, of the value of fourteen hundred dollars 'on approval' to show to my customers. Said knobs to be returned to said A. H. Smith & Co. on demand.

(Signed.) "E. MIERS."

Miers soon after sold the diamonds to Clews for $1,100, taking back in part payment the second pair that he had sold him for $450, and receiving credit on Clew's book for $650, of which $550 was paid out by Clews for Miers' account, but for what purpose does not clearly appear from the evidence. Plaintiffs demanded the diamonds from Miers and from Clews, and this action was brought to recover their possession.

The case has been twice tried. On the first trial the plaintiffs had judgment, which was reversed in this court. (105 N. Y. 286.) On the second trial the complaint was dismissed, and the General Term having affirmed the judgment entered on such dismissal, plaintiffs appealed to this court.

After proving substantially the facts I have stated, the plaintiffs called as a witness Chester Billings, who having testified that he had been an importer and dealer in diamonds in the city of New York for thirty-six years, was asked whether there was a peculiar meaning given in the diamond trade to the words " on approval. " This question was excluded on defendant's objection, and plaintiffs excepted. Plaintiffs then offered to prove by Billings and other witnesses that the words " on approval" mentioned in the receipt had a recognized meaning in the diamond trade, and were understood not to confer a power to sell, but authority merely to show diamonds to a customer and report to the owner, and that this meaning was well known to plaintiffs and to Plumb and Miers. This evidence was excluded on defendant's objection, to which plaintiffs excepted. Evidence is always admissible to explain the meaning of terms used in any particular trade, when their meaning is material to construe the contract, and the rule extends to forms of expression as well as to single words. Evidence of usage is also admissible to apply a written contract to the subject matter of the action, to explain expressions used in a particular sense by particular persons as to particular subjects, to give effect to language in a contract as it was understood by those who made it. ( *Walls* v. *Bailey*, 49 N. Y. 470 ; *Silberman* v. *Clark*, 96 id. 524 ; *Boorman* v. *Johnston*,

12 Wend. 573 ; *Dana* v. *Fiedler*, 12 N. Y. 46 ; *Bissel* v. *Camp-bell*, 54 id. 357 ; *Hinton* v. *Locke*, 5 Hill, 437 ; *Newhall* v. *Appleton*, decided at this term of the court, opinion by Parker, J.) The case shows that this evidence was excluded by the trial court because the plaintiffs did not bring it home to Mr. Clews. Obviously, Clews' knowledge of the custom had nothing to do with the question. No man can be divested of his property without his own consent, and, consequently, even an honest purchaser under a defective title cannot hold against the true owner. That " no one can transfer to another a better title than he has himself is a maxim," says Chancellor Kent, " alike of the common and civil law, and a sale *ex vi termini* imports nothing more than that the *bona fide* purchaser succeeds to the rights of the vendor." (2 Kent's Com. 324, and cases cited.) The rightful owner may be estopped by his own acts from asserting his title. If he has invested another with the usual evidence of title, or an apparent authority to dispose of it, he will not be allowed to make claim against an innocent purchaser dealing on the faith of such apparent ownership. (*McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325.) But mere possession has never been held to confer a power to sell, and an unauthorized sale, although for a valuable consideration, and to one having no notice that another is the true owner, vests no higher title in the vendee than was possessed by his vendor. (*Covill* v. *Hill*, 4 Denio, 323.) Clews' title to the diamonds, therefore, depended wholly on Miers' authority to sell, and he was bound by such limitation as the owner had placed upon Miers' possession, and unless authority to sell existed Clews, although acting in entire good faith, obtained no title to the stones. It was, therefore, of no consequence whether or not Clews knew of the custom of the trade. The inquiry was, did Miers know of it, and had he contracted with reference to it? The offer was to show that the term " on approval " had a well understood meaning in the diamond trade, and as Miers was a dealer and broker in diamonds, if it had appeared that the term had a well understood meaning in the diamond

business, he might fairly be presumed to have been acquainted with the meaning of the expression, and to have contracted in reference to such meaning. But the offer went further and proposed to show actual knowledge in Miers of the meaning of this term; and if such had been the fact, it would not have lain with him to have denied the well understood meaning of an expression used by himself in the agreement by which he acquired possession of the property, nor could he escape the effect of the application of such meaning to the subject-matter of the contract. This evidence was, therefore, admissible, and the exclusion error, for which there must be a new trial, unless the contract between the parties expressed the power to sell in language so well understood that there is no ambiguity, and no room, under the rules of law for parol testimony, to aid in its interpretation.

On the former appeal of this case the court construed the contract, in the light of the evidence then before it, to confer on Miers a power of sale, and if the same evidence was now before us we should feel constrained to follow that decision. It then appeared that plaintiffs, prior to the transaction in question, knew Miers to be a dealer in diamonds, and that the stones which on two former occasions he had sold to Clews had been obtained from plaintiffs through Plumb, who was their agent.

The court emphasized these facts, saying: "The plaintiffs were dealers in diamonds, and they knew Miers, and that he was engaged in the business of a diamond dealer. They had, on two former occasions, intrusted, through their agent, diamonds to Miers, who had sold them and accounted for the proceeds of the sale without any fault being found, so far as appears, on account of any lack of authority to sell. Now, upon these facts, what other meaning can be attached to that receipt than that Miers had power to take these diamonds and show them to the customer, and, if approved of by the customer, sell them to him? It can mean nothing else than an authority to sell the stones to the customer if they met his approval."

These facts do not appear in the case presented to us. On the contrary, it appears that Miers was personally unknown

to plaintiffs until introduced by Plumb on April eleventh, and there is not the slightest evidence to justify the inference that the other stones sold to Clews had been obtained from plaintiffs or from Plumb. We have, therefore, no other dealings between the parties to aid us in interpreting the contract, and are confined to the single transaction out of which this action has grown. Upon the face of the contract it does not import an authority to sell. If the words " on approval" are stricken from the paper, it would appear to be a complete agreement, of plain meaning, in which the authority given is " to show" the diamonds, and the obligation is absolute " to return on demand." Such expressions are wholly inconsistent with an authority " to sell," and its meaning could not be plainer if the parties had inserted after the words " to show" the words " but not to sell.' The words " on approval," as ordinarily interpreted, are neither inconsistent with an authority " to show" or an obligation " to return on demand." We must, however, presume that the parties intended some meaning by their use, and, as the meaning does not appear from the context, we have a case where parol evidence is admissible to enlighten the court, and to show the intent of the parties to the contract. ( *White* v. *Hayt*, 73 N. Y. 512.) It is unfortunate that the case should not now present the same facts that were before the court on the first appeal. Why it does not we are not informed. But we cannot speculate as to what may be the real facts, and must confine our decision to the case now before us.

We think the court erred in excluding the evidence offered, and the judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except FOLLETT, Ch. J., dissenting.

Judgment reversed.