[No. 3411. Decided January 12, 1900.]

A. EISENBERG, *Appellant*, v. BEN C. NICHOLS *et al., Respondents.*

CONDITIONAL SALES—CUSTOM OF JEWELERS—MEMORANDUM MUST BE FILED.

The custom prevailing in the jewelry business, whereby goods sent by a wholesale dealer to a retail merchant under what is called a "memorandum" contract, remain the property of the wholesale dealer and are *only to be paid for after sale* by the retailer, who is entitled to retain his profits, and in case no sale is made, the goods are to be returned to the wholesale dealer, constitutes a conditional sale, and an innocent purchaser of such goods from the retailer comes within the protection of Bal. Code, § 4585, which provides that all conditional sales of property, where the property is placed in the possession of the vendee, shall be absolute as to all creditors, or purchasers in good faith, unless within ten days of the taking of possession by the vendee a memorandum of the terms and conditions of the sale signed by vendor and vendee shall be filed in the auditor's office of the county wherein the vendee resides.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Affirmed.

*Samuel R. Stern,* for appellant.

*R. E. Porterfield* and *T. D. Rockwell,* for respondent Rogers.

The opinion of the court was delivered by

DUNBAR, J.—This is an action in replevin to recover certain jewelry bought of the appellant by the respondent Nichols, and afterwards sold by him to the respondent Rogers. Upon the close of appellant's testimony the respondents challenged the sufficiency of the same on a motion to dismiss, and the motion was granted by the court. Judgment was entered for costs, and from such judgment this appeal is taken.

It is the contention of the appellant that the circumstances under which these goods were purchased show that it was a bailment, instead of a conditional sale, and that the title never passed from the appellant. This contention is based upon the custom which is alleged to exist among jewelers where a jeweler procures from a jobbing or wholesale house lines of goods on selection or memorandum; and that these two words "selection" and "memorandum" have a distinct trade significance, and their meaning as understood in the trade, and, it is alleged in this case, was understood by Nichols, is that goods can be ordered from which selection can be made, and that all can be kept, or a portion, or none, and, if any are selected and kept by the jeweler, he has either to agree upon the terms of the sale, or pay cash for the property kept; that the title of the goods thus sent remains in the sender until paid for, or until it is agreed what credit will be given, which credit is evidenced by bills showing the terms. The goods in question were obtained under this memorandum contract, and were marked "memorandum" or "memoranda," which it is alleged and shown mean the same thing.

It is asserted by the appellant that the principle in-

volved in this case was decided in favor of their contention in *Rumpf v. Barto,* 10 Wash. 382 (38 Pac. 1129); but that case, it seems to us, can easily be distinguished from the case at bar.　There the goods were sent to the purchaser under the following contract:

" These goods are sent for your inspection, the property of Rumpf and Mayer, and to be returned to them within 'demand' (in writing) days.　Sale only takes effect from date of their approval of your selection, and until then goods are to be held subject to their order."　(Description.)

In that case Reichart had no customer, but made arrangements with one Mayberry by which the latter was to sell or pawn the goods for not less than $400, which sum was to be paid Reichart, and they were to divide the proceeds above that sum.　Mayberry pawned them to Barto for $250, and ran away with the whole sum, he knowing that the goods did not belong to Reichart.　The claim of Barto in that case was that he bought the goods from Mayberry, he at the time being the apparent owner; and this court said that Mayberry was simply a thief and had obtained wrongful possession of the goods, and, of course, under such circumstances, could confer no title upon his vendee by conditional sale or otherwise.　*Burbank v. Crooker,* 7 Gray, 158 (66 Am. Dec. 470), was a case where the vendors made a contract with the vendee that they would deliver to him certain goods to be put into his shop for sale, but that the property in them should not pass to the vendee until the price was paid.　The goods were sold without having been paid for, and an action was brought for their recovery, and it was held in that case by the supreme court of Massachusetts that the vendor could recover, but it was upon the ground that it was a conditional sale; and the court deplores the necessity of the decision in the following words:

" The whole doctrine of conditional sales, where the possession is in the vendee and he is apparently the owner, is one rendering purchasers less secure of acquiring a good indefeasible title; but it is well settled, and the purchaser in the present case from Knights takes the usual risk of the right of his vendor to sell this property."

It is insisted by the appellant that this case is decisive of the case at bar, but, as we have observed, the right of the vendor to recover in this case was based upon the theory of a conditional sale; and conditional sales under our statute (§ 4585, Bal. Code) will not protect the vendor unless his contract is filed in the auditor's office. The statute is as follows:

" All conditional sales of personal property or leases thereof containing a conditional right to purchase where the property is placed in the possession of the vendee shall be absolute as to all creditors, or purchasers in good faith, unless within ten days of the taking of possession by the vendee a memorandum of such sale, stating its terms and conditions and signed by the vendor and vendee, shall be filed in the auditor's office of the county wherein, at the date of the vendee's taking possession of the property, the vendee resides."

So, instead of *Burbank v. Crooker, supra,* being a case in favor of appellant's contention, it seems to us to sustain exactly the opposite doctrine, viz., that the contract in question is a conditional sale.

The testimony in this case shows that the transaction falls within the words and spirit of the statute. It was a contract containing, in the language of the statute, "a conditional right to purchase where the property is placed in the possession of the vendee;" and the evidence in this case not only showed that Nichols had a right to purchase this stock, but that he also had a right to sell the same. The testimony of Mr. Riordan, on page 15 of the record, on cross examination, was as follows:

Q.   When goods are sent on memorandum, with the ownership as stated by you, you have a right to sell any of them or all?

A.   Yes, sir; you have a right to sell them.

Q.   To anybody?

A.   Yes, sir; to anybody.

It is true that on re-direct examination in answer to the question, "But you have got to pay for them in cash?" the witness answered "Yes," but, notwithstanding this, the sale was warranted before the cash was to be paid. . This must be true if the witness stated the truth that, when goods were sent on memorandum, the party receiving them had a right to sell them, for on re-cross examination the following testimony was elicited:

"Q.   You do not pay for goods spot down when you sell to somebody else when they are on memorandum?

A.   The house has got to send you a bill.

Q.   Yes, and in the meantime you have a right to sell any of those goods, either on cash or on time?

A.   Yes, sir.

Re-direct—

Q.   Provided you pay for them?

A.   Yes, sir.

Re-cross—

Q.   But you have a right to sell them out to anybody at any time, on any terms?

A.   Yes, sir."

It is conclusive from the testimony that the purchaser of these goods had a right to sell them before he paid for them. Mr. Doerr testified, on page 16 of the record, that when he sold an article it was reported to the house, and they sent him a regular bill of the same, telling the amount, etc.   It is true that this witness stated as a conclusion that the ownership remained in the vendor until the goods were paid for; but that was a question of law upon which he was not qualified to testify.   Surely, the testimony in this case brings it within the provisions of

the statute and removes it from that character of cases where goods were sent for the purpose of selection, without any right of disposal until it is determined between the vendor and the vendee what goods are selected and what are to be returned.    Indeed, the appellant, in his reply brief, admits, in answering the argument of respondents' counsel, that, according to his own statement, a sale would be justified, by the following statement:

" But, says respondent, if the dealer is obliged to pay for goods before he can transfer title, how is he benefited by the custom?

He is benefited as Nichols thought he was being benefited.    He told Mr. Marx he had a customer for a three-carat stone, and for certain turquoise and diamond rings. He could show the stones or the rings to the customers; if they suited, and he made a sale, he pocketed his profit and paid for the property, and thus avoided carrying the goods in stock, and taking a chance of selling them and paying for them whether he sold them or not."

The whole testimony shows that counsel for appellant was justified in making this statement, for it shows that Nichols had a right to make the sales and pay for the goods afterwards; and, if he did have such right, the case falls squarely within the statute.

*Pratt v. Burhans,* 84 Mich. 487 (47 N. W. 1064, 22 Am. St. Rep. 703), is another case of conditional sale, and is not in point, because it does not appear that any statute providing for the filing and recording of conditional sales was in existence in the state of Michigan at the time that decision was rendered.

Appellant relies largely upon, and quotes extensively from *Smith v. Clews,* 114 N. Y. 190 (21 N. E. 160, 11 Am. St. Rep. 627, 4 L. R. A. 392).    In that case one Plumb, who was a diamond broker, introduced to Smith (plaintiff in the case) one Elijah Miers, telling Smith that Miers thought that, if he saw a pair of diamond ear-

knobs that suited him, he could sell them to Clews. They were not paid for, and in time the plaintiffs demanded the diamonds from Miers and from Clews, and an action was brought to recover their possession. In that case the bills were sent marked "On approval," and, as in this case, it was shown that it was understood among jewelers that, where goods were marked in this manner, there was no power conferred to sell, but authority merely to show the diamonds to a customer and report to the owner; and it did not, under the circumstances, make any difference whether the purchaser, Clews, understood the contract between his vendor and the plaintiff or not, but that he was bound by the authority of his vendor to sell, and was bound by such limitations as the owner had placed upon Miers' possession, and, unless authority to sell existed, Clews, although acting in good faith, obtained no title to the stones; but it will be seen from the following excerpt from the opinion in that case that, if the same state of facts had existed there as exist here, Clews would have been protected in his purchase. The court said:

" On the former appeal of this case the court construed the contract, in the light of the evidence then before it, to confer on Miers a power of sale, and if the same evidence was now before us we should feel constrained to follow that decision. It then appeared that plaintiffs, prior to the transaction in question, knew Miers to be a dealer in diamonds, and that the stones which on two former occasions he had sold to Clews had been obtained from plaintiffs through Plumb, who was their agent. The court emphasized these facts, saying: 'The plaintiffs were dealers in diamonds, and they knew Miers, and that he was engaged in the business of a diamond dealer. They had, on two former occasions, intrusted, through their agent, diamonds to Miers, who had sold them, and accounted for the proceeds of the sale without any fault being found, so far as appears, on account of any lack of authority to sell. Now, upon these facts, what other meaning can be attached to that receipt than that Miers had power to take

these diamonds, and show them to the customer, and, if approved of by the customer, sell them to him? It can mean nothing else than an authority to sell the stones to the customer if they met his approval.' These facts do not appear in the case presented to us."

It will be observed that the facts quoted by the court as sustaining the right of Clews to the possession of these goods, were identical in principle with the facts shown in this case, and in addition to this, it does not appear that the statute in relation to the filing of conditional sales existed in the state of New York. An examination of all the other cases cited by appellant shows that they are not applicable under our statute. There is no question but that, if these statutes to which we have referred had not been enacted, it would have been claimed — and justly claimed — that this transaction was a conditional sale, and the appellant would have urged in his behalf the authorities pronouncing such a transaction a conditional sale. This statute was enacted for the purpose of preventing hardships to innocent purchasers, which became notoriously common under the established law in relation to conditional sales, and we are not inclined to destroy its efficacy by a construction which would be a practical annulment of the law by pronouncing that a bailment which, before the enactment of the statute, would have been conceded under the authorities to have been a conditional sale.

It not appearing that any fraud was committed by Rogers in the purchase of these goods, and there being no testimony to show that he was not a *bona fide* purchaser, there was nothing for the jury to determine, and the court properly dismissed the action.

The judgment is affirmed.

FULLERTON and REAVIS, JJ., concur.

GORDON, C. J.—I think there was sufficient conflict in the evidence to have required the submission of the case to the jury.

Section 4585, Bal. Code, only makes a conditional sale *absolute* as to creditors or *purchasers in good faith,* and, in my opinion, there were many circumstances surrounding the sale from respondent Nichols to respondent Rogers tending to show that the latter was not a "purchaser in good faith." I think the court erred in taking the case from the jury.