BERRY BROS. v. SNOWDON et al.

In re GRAVES et al.

(Circuit Court of Appeals, Ninth Circuit. November 25, 1913.)

No. 2,286.

1. SALES (§ 4*)—SALE OR BAILMENT—CONSIGNMENT OF GOODS FOR SALE.

Claimant shipped to bankrupts, who owned a warehouse for the storage of goods and also a salesroom at a different place in the city where they sold goods, certain goods under a contract which stated that the goods were "consigned for sale." Pursuant to the terms of the contract claimant paid the freight on the goods, cartage to the warehouse where they were stored, and also storage and insurance thereon. An invoice or detailed statement of the goods was sent to bankrupts, who had the privilege of removing any of them to their store for sale when desired, sending a statement of the goods removed each month to claimant, which then sent them a regular invoice charging them with the goods so removed. From time to time claimant, with the knowledge of bankrupts, withdrew parts of the goods and sold them on its own account, and within four months prior to the bankruptcy it withdrew all that remained. *Held,* that the contract was not one of sale, either absolute or conditional, but of bailment, under which title did not pass to any of the goods except those removed by, and regularly billed to, bankrupts.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 7–11; Dec. Dig. § 4.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** SALES (§ 4*)—TITLE TO PROPERTY—EFFECT OF DELIVERY OF "INVOICE."
An invoice is not a bill of sale nor evidence of a sale and is as appropriate to a bailment as to a sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 7–11; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 4, pp. 3761, 3762.]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

In the matter of Edwin L. Graves and George E. La Belle, copartners as Graves & La Belle and the Federal Paint & Wall Paper Company, and Edwin L. Graves and George E. La Belle, individually, bankrupts. Appeal from order affirming disallowance by R. S. Snowdon, trustee of Berry Bros., a corporation. Reversed.

Frank E. Green, of Seattle, Wash., for appellant.

Cassius E. Gates, Gates & Emery, McClure & McClure, and Walter A. McClure, all of Seattle, Wash., for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. [1] The appeal in this case is from the judgment of the District Court confirming an order made by the referee in bankruptcy rejecting and expunging a claim made by the appellant against the bankrupts. The appellant is a corporation of the state of Michigan, and the bankrupts were at the time of their adjudication in bankruptcy doing business in the city of Seattle, state of Washington, having a warehouse for the storage of goods, and at a separate and distinct place in the same city a salesroom in and from which they sold goods. The agreed statement of the respective parties shows that, while the bankrupts were so carrying on their business, the appellant shipped them certain goods and merchandise of the aggregate value of about $5,000 under and pursuant to this written agreement:

"March 18, 1912.

"Agreement between Berry Brothers, Limited, of Detroit, Michigan, party of the first part, and Graves & La Belle, of Seattle, Washington, party of the second part:

"The party of the second part hereby agree to store such goods that the party of the first part may ship on consignment to the party of the second part for the purpose of sale by said Graves & La Belle.

"The party of the second part agree to report on the first of each month the amount of goods sold by them from said stock for which party of the first part will render an invoice at the regular terms and prices of such goods according to the quantity sold.

"The party of the first part agree to pay the party of the second part the cost of cartage in Seattle from the car to their warehouse of each consignment of goods, and 3¢ per case per month for storage based on the stock on hand at the first of each month.

"The party of the first part will carry and pay for such insurance as they deem necessary for the goods on consignment.

"The party of the first part will render a memo invoice to the party of the second part of all goods shipped on consignment, and will credit to such consignment account the amount of goods that are sold each month from said stock, and the party of the second part agree to pay for such goods sold by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
209 F.—22

them, or taken from consigned goods while in their possession on the terms which they are billed by the party of the first part on their regular invoice.

"It is also agreed that this contract can be terminated at any time upon thirty days' written notice from either party.

"Berry Brothers, Limited,

"Jas. S. Stevens, Asst. Genl. Mngr.

"Graves & La Belle,

"By G. E. La Belle."

It was further stipulated by the parties that Berry Bros. paid the freight on the goods, the cartage thereon from the cars to the warehouse of Graves & La Belle; that the goods were thereupon placed in the said warehouse, in which were also goods, wares, and merchandise belonging to the said Graves & La Belle, and that Berry Bros., also paid the insurance and storage on the goods so shipped by them during the entire time those goods remained in the said warehouse; that Berry Bros., at the time of their said shipments, delivered to Graves & La Belle "detailed statements" covering the same, and that they (Berry Bros.) at various times thereafter withdrew parts of the goods so consigned by them and stored as aforesaid and sold the same on their own account, independent of, but with the knowledge of and without objection by, the said Graves & La Belle; that, whenever Graves & La Belle withdrew any portion of the said consigned goods from their warehouse, report of such withdrawal was made by them to Berry Bros., and "monthly statements were rendered by said Berry Bros. to said Graves & La Belle of the amount of stock so withdrawn during the preceding month"; that on or about November 16, 1912, "said Berry Bros., with knowledge of the financial condition of said Graves & La Belle, and with knowledge that bankruptcy proceedings might be instituted within a short time after said date, withdrew from said Graves & La Belle the goods, wares, and merchandise theretofore delivered by Berry Bros. then remaining in said warehouse of the value of about $3,000; that some of the creditors of said bankrupts interposed objections to the return of said goods, but that in order to avoid litigation said objections were waived and Berry Bros. were allowed to retake said stock upon condition that they would, in case of bankruptcy proceedings within four months of said date, permit the question of their right to the possession of said goods (to) be submitted to the bankruptcy court of this district," the written agreement to that effect being inserted in the record.

The order of the referee confirmed by the court below, which disallowed and expunged the claim of Berry Bros. for $1,861.50 against the bankrupts, was based upon the grounds:

"(1) That proper credits have not been allowed for payments made on said account.

"(2) That, subsequent to the first day of the four months immediately preceding the filing of the petition by the above-named bankrupts, the said Berry Bros., a corporation, claimant, with knowledge of the insolvency of the said Graves & La Belle, and without any present consideration therefor, received from said Graves & La Belle certain goods, wares, and merchandise, the same being the property of the bankrupts, of the value of approximately $3,000, thereby obtaining a preference and enabling them to receive a larger proportion of their claim than the other creditors of said bankrupts of the same class; the said Graves & La Belle being then insolvent."

It will be seen from the foregoing statement that the proper disposition of the appeal depends upon the true character of the agree-ment between Berry Bros. and Graves & La Belle. The court below held that it constituted as to the creditors, if not an absolute sale, a conditional one, and that it was void as against the creditors because not recorded pursuant to a statute of the state of Washington requiring recordation of such sales. But we are unable to so regard the contract between the parties. We think it was not a sale of any kind. In more than one place in the agreement it is distinctly stated that the goods were to be consigned for sale, which is an altogether different thing. The true distinction between a sale and an option to purchase, said the Supreme Court in Sturm v. Boker, 150 U. S. 329, 14 Sup. Ct. 99, 37 L. Ed. 1093, is pointed out by the Supreme Court of Massachusetts in Hunt v. Wyman, 100 Mass. 198, 200, as follows:

"An option to purchase if he liked is essentially different from an option to return a purchase if he should not like. In one case the title will not pass until the option is determined; in the other the property passes at once, subject to the right to rescind and return."

Such cases are strictly analogous to that now before us. If, as the court below in effect held, the title to the goods under the contract passed from Berry Bros. to Graves & La Belle, how comes it that the former were thereby required to pay the freight, cartage, storage, and insurance on the goods while in Graves & La Belle's warehouse? Such provisions in respect to payments by Berry Bros. are wholly inconsistent with the passing of the title to the property from them to Graves & La Belle. So, also, is that other provision of the contract by which the latter agreed "to pay for such goods sold by them or taken from consigned goods while in their possession on the terms which they are billed by the party of the first part on their regular invoice."

[2] The invoices, or "detailed statements" as they are called in the stipulation of the parties, did not change the terms of the written agreement under which the property was sent to the consignees. "An invoice," as said by the Supreme Court in Dows v. National Exchange Bank, 91 U. S. 618, 630 (23 L. Ed. 214), "is not a bill of sale, nor is it evidence of a sale. It is a mere detailed statement of the nature, quantity, and cost or price of the things invoiced, and it is as appropriate to a bailment as it is to a sale.  *  *  *  Hence, standing alone, it is never regarded as evidence of title." See, also, Sturm v. Boker, 150 U. S. 312, 328, 14 Sup. Ct. 99, 37 L. Ed. 1093.

And that neither of the parties to this contract considered that it was in truth anything more than it purported to be, to wit, a mere consignment of the goods for sale upon the terms and conditions therein stated, is very clearly shown by the agreed statement of facts, from which it appears, among other things, that Berry Bros. at various times "withdrew parts of the goods so consigned by them and stored as aforesaid and sold the same on their own account, independent of, but with the knowledge of and without objection by, the said Graves & La Belle"; and that, whenever Graves & La Belle withdrew any portion of the said consigned goods from their warehouse, report of such withdrawal was made by them to Berry Bros., and "monthly statements

were rendered by said Berry Bros. to said Graves & La Belle of the amount of such stock so withdrawn during the preceding month." It is manifest that such conduct of the parties is wholly inconsistent with the idea of a sale on the part of the one and a purchase by the other.

We think the contract clearly one of bailment, and that the bankrupts never acquired title to any of the consigned property that they did not purchase pursuant to the option given them by the contract. See Sturm v. Boker, 150 U. S. 328, 329, 330, 14 Sup. Ct. 99, 37 L. Ed. 1093. And while it is true that under the amendment of the Bankruptcy Act of June 25, 1910, a trustee in bankruptcy is vested with the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, the lien so given is a lien on the property of the bankrupts and not a lien on the property of third persons.

The conclusion to which we have come is, we think, supported by the cases of Wood Mowing & Reaping Mach. Co. v. Vanstory, 171 Fed. 375, 96 C. C. A. 331; Southern Hardware & Supply Co. v. Clark, 201 Fed. 1, 119 C. C. A. 339; L. C. Smith & Bros. Typewriter Co. v. Alleman, 199 Fed. 1, 117 C. C. A. 577; In re Columbus Buggy Co., 143 Fed. 859, 74 C. C. A. 611; In re Reynolds (D. C.) 203 Fed. 162. The facts in the case of Penny & Anderson (D. C.) 176 Fed. 141, 23 Am. Bankr. Rep. 115, are quite different from those in the present case.

The judgment is reversed, and the cause remanded for further proceedings in accordance with the views above expressed.