UTICA TRUST AND DEPOSIT COMPANY, Appellant, *v.* FELIX
B. DECKER, Respondent, Impleaded with Another.

Mortgage — foreclosure — estoppel — validity of chattel
mortgage — section 45 of Personal Property Law providing for
posting of sign and filing notice of lien upon merchandise
not applicable to chattel mortgage — mortgage valid if filed
in accordance with sections 230, 232, of Lien Law — mortgagee
not estopped from claiming title to automobiles left with
dealer for exhibition purposes only but sold to innocent
purchasers for value.

1. Mortgages, or conveyances intended to operate as mortgages
of goods and chattels, are not comprehended within the meaning
of the words " liens upon merchandise or the proceeds thereof created
by agreement," in relation to which section 45 of the Personal Property
Law provides that they shall not be void as against creditors or
otherwise by reason of lack of possession by the lienor if certain
designated notices are posted and filed.   Sections 230 and 232 of the
Lien Law provide for the filing of chattel mortgages and as to them
it is unnecessary to post the sign and file the notice required under
the Personal Property Law.

2. In an action, therefore, to foreclose a chattel mortgage upon
two automobiles made to the plaintiff by dealers who were permitted
to keep them in their warerooms for exhibition purposes but who
sold one to each of the defendants for value, they having no knowledge
of the mortgage, a contention that the mortgage was null and void
because of the failure of the mortgagee to post the sign and file the
notice specified in section 45 of the Personal Property Law cannot be
sustained.   The mortgage in question having been filed in accordance
with the provisions of the Lien Law (§§ 230, 232) was valid.

3. Nor is the plaintiff estopped by its conduct from claiming title
to the mortgaged automobiles.   An owner, by the mere delivery of
possession of chattels to another, is not precluded from claiming
title thereto.   Neither is it sufficient to work an estoppel that the
person to whose possession the owner intrusts chattels is a dealer in
similar merchandise.   Nor is it sufficient to make out an estoppel
that the possessor of the chattel is authorized by the owner to exhibit
the same for the purpose of obtaining offers of purchase.   (*Biggs* v.
*Evans*, 1894 (1 Q. B.), 88; *Smith* v. *Clews*, 114 N. Y. 190, followed.)
   *Utica Trust & Deposit Co.* v. *Decker*, 217 App. Div. 137, reversed.

. (Argued January 14, 1927; decided February 23, 1927.)

APPEAL from a judgment, entered May 20, 1926, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directing a dismissal of the complaint.

*James F. Hubbell* for appellant.    Unless it was necessary for the appellant to comply with section 45 of the Personal Property Law, then the chattel mortgage was valid as against this respondent.    (*Griswold* v. *Sheldon,* 4 N. Y. 581; *Edgell* v. *Hart,* 9 N. Y. 213; *Ford* v. *Williams,* 13 N. Y. 577; *Gardner* v. *McEwen,* 19 N. Y. 123; *Ford* v. *Williams,* 24 N. Y. 359; *Conkling* v. *Shelley,* 28 N. Y. 360; *Miller* v. *Lockwood,* 32 N. Y. 293; *Russell* v. *Winne,* 37 N. Y. 591; *Frost* v. *Warren,* 42 N. Y. 204; *Southard* v. *Benner,* 72 N. Y. 424; *Brackett* v. *Harvey,* 91 N. Y. 214; *Potts* v. *Hart,* 99 N. Y. 168; *Mandeville* v. *Avery,* 124 N. Y. 376; *Spaulding* v. *Keyes,* 125 N. Y. 113; *Skilton* v. *Codington,* 185 N. Y. 80.)    Section 45 of the Personal Property Law has no application to a mortgage upon specific chattels, filed pursuant to section 230 of the Lien Law.    (*Hollins* v. *Hubbard,* 165 N. Y. 534; *People ex rel. Fleming* v. *Dalton,* 158 N. Y. 168.)

*Milton P. Kupfer* and *Leo Oppenheimer* for General Motors Acceptance Corporation et al., *amici curiæ.* Section 45 of the Personal Property Law was enacted in 1911 solely to protect the general liens of commission merchants.    It has never been held to apply to instruments conferring specific liens on specific chattels, like chattel mortgages, and neither its history, nor its purpose, nor its language justifies — much less requires — such a holding.    (*Hollins* v. *Hubbard,* 165 N. Y. 534; *Boise* v. *Talcott,* 212 Fed. Rep. 268; *Ommen* v. *Talcott,* 188 Fed. Rep. 401; *People ex rel. Fleming* v. *Dalton,* 158 N. Y. 175.)

*Henry W. Williams* for First National Bank of Glens Falls, *amicus curiæ.*    Section 45 of the Personal Property

Law does not have the effect ascribed by the court below. (*Apex Leasing Co.* v. *Litke,* 173 App. Div. 323; 225 N. Y. 625; *National Surety Co.* v. *Gotham Garage Co.,* 127 Misc. Rep. 422; *Matter of Packard Press,* 5 Fed. Rep. [2d] 633.)

*Francis T. Ropiecki, Duane R. Dills* and *H. C. Sholes* for respondent. At common law the mortgage is void as to creditors, and more so as to innocent purchasers whose equities are superior to those of creditors. (*Benedict* v. *Ratner,* 268 U. S. 353; *Griswold* v. *Sheldon,* 4 N. Y. 581; *Edgell* v. *Hart,* 9 N. Y. 213; *Ford* v. *Williams,* 13 N. Y. 577; 24 N. Y. 359; *Gardner* v. *McEwen,* 19 N. Y. 123; *Conkling* v. *Shelley,* 28 N. Y. 360; *Miller* v. *Lockwood,* 32 N. Y. 293; *Russell* v. *Winne,* 37 N. Y. 591; *Frost* v. *Warren,* 42 N. Y. 204; *Southard* v. *Benner,* 72 N. Y. 424; *Brackett* v. *Harvey,* 91 N. Y. 214; *Potts* v. *Hart,* 99 N. Y. 168; *Reynolds* v. *Ellis,* 103 N. Y. 115; *Haugen* v. *Hochmeister,* 114 N. Y. 566; *Mandeville* v. *Avery,* 124 N. Y. 376; *Spaulding* v. *Keyes,* 125 N. Y. 113; *Skilton* v. *Codington,* 185 N. Y. 80.) The appellant, under the doctrine of estoppel, is precluded from asserting any claim against the respondent. (*Thompson* v. *Blanchard,* 4 N. Y. 303; *Moore* v. *Metropolitan Nat. Bank,* 55 N. Y. 44; *Dows* v. *Kidder,* 84 N. Y. 128; *Glass* v. *Continental Guaranty Corp.,* 81 Fla. 687; *New England Auto Investment Co.* v. *St. Germaine,* 121 Atl. Rep. 398; *Gramm-Bernstein Motor Truck Co.* v. *Todd,* 209 Pac. Rep. 3; *Anglo-California Trust Co.* v. *Pacific Acceptance Corp.,* 70 Cal. App. 41; *General Motors Acceptance Corp.* v. *Boddeker,* 274 S. W. Rep. 1016; *Forgan* v. *Bridges,* 281 S. W. Rep. 134; *Emerson-Brantingham Implement Co.* v. *Faulkner,* 241 Pac. Rep. 431.) The mortgage is void because of the failure to comply with section 45 of the Personal Property Law, which provides the only method of creating a lien upon merchandise. (*Howland* v. *Woodruff,* 60 N. Y. 80; *Rohrbach* v. *Germania Fire*

*Insurance Co.,* 62 N. Y. 47; *Crommelin* v. *Railroad Co.,*
10 Bosw. 80; *Brooks* v. *Bryce,* 21 Wend. 16; *Wynne* v.
*City of Eastman,* 105 Ga. 614; *Mitchell* v. *Town of Plover,*
53 Wis. 548; *Torres* v. *Shawano County,* 79 Wis. 152;
*Emerson-Brantingham Implement Co.* v. *Faulkner,* 241
Pac. Rep. 431.)

KELLOGG, J.   This action was brought to foreclose a
chattel mortgage upon two automobiles, specifically
described in the mortgage, one of which was sold by the
mortgagors to the defendant Decker and one to the
defendant Foote, each of whom was a purchaser for value,
having no actual knowledge of the existence of the mort-
gage.   The defendant Decker answered asserting (1) that
the mortgage was null and void because of the failure of the
mortgagee to post the sign and file the notice specified in
section 45 of the Personal Property Law (Cons. Laws,
ch. 41), and (2) that the plaintiff was estopped by its con-
duct from claiming title under the mortgage.   After a
trial of the issues at Special Term the court granted judg-
ment for the foreclosure of the mortgage and the sale of the
two automobiles to satisfy the mortgage debt remaining
unpaid.   The defendant Decker appealed to the Appellate
Division, which, by a divided court, reversed the judg-
ment, made certain additional findings of fact, and granted
judgment dismissing the complaint as against the
defendant Decker.

Certain persons, named O'Donoghue and Wetzel,
under the firm name of Genesee Motor Car Company,
conducted in the city of Utica, N. Y., the business of
selling motor cars.   For the purpose of raising money to
pay for a consignment of four automobiles, O'Donoghue
and Wetzel, on April 10, 1924, signed the firm name to a
note payable to the firm on demand, indorsed the firm
name thereupon, and delivered the same to the plaintiff,
the Utica Trust and Deposit Company.   They also
executed and delivered to the plaintiff bank, as collateral

security for the payment of such note, a chattel mortgage, transferring title in the four automobiles to such bank. The chattel mortgage described each of the four automobiles by motor and serial number and specified the value of each car.  It named 1805 Genesee street, the place of business of the mortgagors, as the "Place of Storage."  It required the mortgagors to take immediate possession of the automobiles and thereafter to keep them stored at its place of storage specified.  The mortgagors, by the terms of the mortgage, agreed, in regard to the automobiles mortgaged, that they would "neither sell, mortgage, rent, loan nor transfer any one of them, nor permit any one of them to go out of their possession, nor secrete any one of them, nor use any one of them for other than exhibition purposes, until the same has been released from this mortgage by the party of the second part as hereinafter provided." The mortgagee, on its part, agreed that, upon payment to it of a sum equal to the value of any automobile, as specified by the mortgage, it would execute and deliver to the mortgagors a writing releasing such automobile from the mortgage.  A copy of the mortgage was subsequently filed in the county clerk's office, as required by sections 230 and 232 of the Lien Law (Cons. Laws, ch. 33).  The mortgagors, O'Donoghue and Wetzel, received from the plaintiff the full amount of the note, paid the proceeds over to the consignor of the automobiles and, taking possession thereof, stored them in their building at 1805 Genesee street, where they conducted the business of selling motor cars. Thereafter they paid the plaintiff the stipulated value of two of the mortgaged cars, obtained releases therefor and sold the same to customers.  The mortgage debt was, by the payment, reduced to one-half of the amount of the original note.  Thereafter, without paying the plaintiff, or obtaining further releases, they sold one of the remaining automobiles to the defendant Decker and one to the defendant Foote.  These purchasers paid full value and had no actual knowledge of the existence of the

mortgage. It was conceded upon the trial that the plaintiff, when it made the loan, knew that O'Donoghue and Wetzel, under the firm name of Genesee Motor Car Company, were engaged at 1805 Genesee street, Utica, N. Y., in the sale of motor cars to users. It was also conceded that O'Donoghue and Wetzel, from some time in the year 1922 to April 10th, 1924, had given the plaintiff chattel mortgages, similar in terms to that sought to be foreclosed, to the number of fifty-eight, covering 244 separate motor cars. It was not conceded or proven that any cars so covered by mortgages had been sold by O'Donoghue and Wetzel without their first having obtained releases from the mortgagee, as provided in the mortgages.

We think that the contention that the mortgage was null and void, in that the provisions of chapter 45 of the Personal Property Law were not complied with, is not sound. Section 45 was added to the Personal Property Law by chapter 326, Laws of 1911, which likewise amended section 230 of the Lien Law. The latter section, as amended, provides, in part, as follows: " Every mortgage or conveyance intended to operate as a mortgage of goods and chattels * * * which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, is absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, is filed as directed in this article." Section 45 of the Personal Property Law provides that " Liens upon merchandise or the proceeds thereof created by agreement for the purpose of securing the repayment of loans or advances made or to be made upon the security of said merchandise and the payment of commissions or other charges provided for by such agreement, shall not be void or presumed to be fraudulent or void as against creditors or otherwise, by reason of want of delivery to or possession

on the part of the lienor," provided there is placed and maintained at the entrance of every building containing such merchandise, a sign stating the name of the lienor and designating said lienor as " lienor, factor or consignee " and provided further that a notice, stating certain facts in relation to the lien, is filed. Thus section 230 of the Lien Law applies to " every mortgage or conveyance intended to operate as a mortgage of goods and chattels; " whereas, section 45 of the Personal Property Law relates to " liens upon merchandise or the proceeds thereof created by agreement." In the case of the former, the mortgage, or a true copy thereof, must be filed in the town or city where the mortgagor resides. (Lien Law, sec. 232.) In the case of the latter, in addition to posting a sign at the entrance of the building where the chattels are situated, a notice, naming the lienor and the creator of the lien, describing the general nature of the merchandise subject to the lien, the period of time during which advances may be made thereupon, and various other facts, must be filed in the town or city where the merchandise is situated and also in the town or city where the lienor has his place of business. (Personal Property Law, sec. 45.) Thus, if the liens of section 45 are inclusive of the chattel mortgages of section 230, we have two separate provisions requiring wholly different acts to be performed in order to give the mortgage validity. Yet, each section, either expressly or inferentially, declares that the acts specified by it will be sufficient to save the mortgage from invalidity. In order, therefore, that each section should be given full effect, it would seem necessary to draw a distinction between the liens of section 45 and the chattel mortgages of section 230. If we apply the common-law concept of a chattel mortgage we will have no difficulty in making the distinction. Thus, in *Parshall* v. *Eggert* (54 N. Y. 18, 23) the following definition is given: "A chattel mortgage is a present transfer of the title to the property mortgaged, subject to be defeated on payment of the sum or instru-

ment it is given to secure." (To the same effect are *Rochester Distilling Company* v. *Rasey*, 142 N. Y. 570; *Barrett Manufacturing Company* v. *Van Ronk*, 212 N. Y. 90; 11 C. J. 398; 5 Ruling Case Law, p. 383; Jones on Chattel Mortgages, p. 1.) Chattel mortgages are in no sense " liens upon merchandise or the proceeds thereof " for they are not liens at all. They are not " created by agreement." They are not given to secure " the payment of commissions or other charges." A mortgagee named therein could in no true sense be designated " as lienor, factor or consignee " in a sign to be posted as required by ,section 45 of the Personal Property Law. It may well be that the provisions of that section were intended exclusively to afford liens to factors, not in possession of the goods of their principals, for advances made upon the goods. The debates which were had in the Legislature, at the time of the enactment of section 45, would indicate that such was the purpose of those who sponsored the enactment. However this may be, it would be sufficient, for the purpose of this case, to hold that " liens upon merchandise or the proceeds thereof created by agreement," in relation to which section 45 of the Personal Property Law makes provision, do not comprehend a " mortgage or conveyance intended to operate as a mortgage of goods and chattels," in relation to which section 230 of the Lien Law provides, and that in the case of such a mortgage it is unnecessary to post the sign and file the notice required by section 45. The same result may be achieved by a different line of reasoning. Section 230 of the Lien Law, in addition to the provision quoted, contains the following: " This article shall not apply to agreements creating liens upon merchandise or the proceeds thereof for the purpose of securing the repayment of loans or advances made or to be made upon the security of said merchandise and the payment of commissions or other charges provided for by such agreement, where the conditions specified in section forty-five of the personal

property law are complied with, * * *." Inferentially, it is thus provided that, if the sign is not posted and the notice is not given, as provided by section 45 of the Personal Property Law, then the provisions of section 230 of the Lien Law *shall apply,* and a filing thereunder will be sufficient to save the chattel mortgage." Thus the same conclusion is reached that it is unnecessary to post and file, under section 45, in order to give a chattel mortgage validity. In our case the provisions of section 45 were not complied with, so that the provisions of section 230 took effect. Whichever path of reasoning we follow, therefore, the conclusion is necessarily reached that the mortgage in question, having been filed in accordance with the provisions of section 230 of the Lien Law, was a valid mortgage.

In substantiation of his claim that the plaintiff is estopped by its conduct from claiming title to the mortgaged automobiles, the defendant cites the fact that possession of the automobiles was accorded to the mortgagors by the mortgagee; that the mortgagee knew that the mortgagors were dealers who sold automobiles at the very place where the mortgaged automobiles were required to be stored; that the mortgagee authorized the mortgagors to use the automobiles for " exhibition " purposes, presumably to the end that they might be sold. It is the universal rule that an owner, by the mere delivery of possession of chattels to another, is not thereby precluded from claiming title thereto. (Williston on Sales, sec. 313; 25 L. R. A. [N. S.] p. 760; note, *Covill* v. *Hill,* 4 Denio, 323; *Ballard* v. *Burgett,* 40 N. Y. 314; *McNeil* v. *Tenth National Bank,* 46 N. Y. 325; *Smith* v. *Clews,* 114 N. Y. 190.) Neither is it sufficient, to work an estoppel, that the person to whose possession the owner intrusts chattels is a dealer in similar merchandise. (Williston on Sales, sec. 314; *Smith* v. *Clews, supra; Biggs* v. *Evans,* [1894] 1 Q. B. 88; *Forristal* v. *McDonald,* 9 Can. S. C. 12.) In the last case the remark is made that if the true doctrine were other-

wise than as stated above " no man could safely leave his watch with a watch maker who sells watches, or his carriage with a carriage maker who sells carriages, to be repaired." Similarly, it might be said that if the doctrine were otherwise no automobile owner could safely leave his car in a garage, where the business of selling cars is conducted, for the purpose of storing the same or having it repaired. Again, it is not sufficient, to make out an estoppel, that the possessor of the chattel is authorized by the owner to exhibit the same for the purpose of obtaining offers of purchase. (Williston on Sales, sec. 315; *Biggs* v. *Evans, supra; Smith* v. *Clews, supra.*) The cases last cited are peculiarly pertinent upon this issue.

In *Biggs* v. *Evans* (*supra*) the owner of an article of a class dealt in by jewelers sent it to a dealer in jewelry who ordinarily sold such things for other people in his own name. He sent with it a letter which contained the following: " I will intrust you with the sale of my opal table upon the following conditions. That the table shall not be sold to any person nor at any price without my authorization is first obtained that such sale shall be effected." The tabletop was sold by the jeweler, without obtaining further authority, to a *bona fide* purchaser for value. The plaintiff succeeded in his suit to recover possession from the purchaser. WILLS, J., remarked that if the plaintiff had given general authority to the jeweler to sell, any limitation imposed as to the terms on which, or the manner in which, the sale should be conducted, would have been unavailing, but that here was no such case since the jeweler was not to sell the tabletop at all until further authority was given. He said: " The true test is, I take it, whether the authority given in fact is of such a nature as to cover a right to deal with the article at all."

In *Smith* v. *Clews* (*supra*) plaintiffs, who were diamond merchants, delivered to a diamond broker, named Miers, a pair of diamond ear-knobs and took from him a receipt

as follows: " Received from Alfred H. Smith & Co.
* * * a pair of single stone diamond ear-knobs
* * * ' on approval ' to show to my customers. Said
knobs to be returned to said A. H. Smith & Co. on
demand." Miers had told the plaintiff that he thought
he could sell the knobs to the defendant Clews. Miers did
in fact sell the knobs to Clews, who paid value therefor
and had no knowledge of the plaintiff's title. An action
was then brought by the plaintiffs to recover the knobs
from Clews. Evidence was offered by the plaintiffs to
show that in the diamond trade the words " on approval "
were understood not to confer a power to sell, but authority
merely to show diamonds to a customer and report to
the owner. The complaint was dismissed. This court
reversed on the ground that error was committed in
excluding proof as to the meaning· of the expression " on
approval." The decision is a direct authority, therefore,
to the effect that an owner is entitled to recover chattels
from a dealer to whom he has intrusted them, provided
he can show that while authority was given to exhibit the
chattels for sale, no authority to sell, without first report-
ing to the owner, was conferred. BROWN, J., said:
" Clews' title to the diamonds, therefore, depended wholly
on Miers' authority to sell, and he was bound by such
limitation as the owner had placed upon Miers' possession,
and unless authority to sell existed Clews, although acting
in entire good faith, obtained no title to the stones."

In the case at bar ·the Genesee Motor Car Company,
although given the power to exhibit the mortgaged auto-
mobiles to purchasers, was never authorized by the
plaintiff to make any sales thereof. On the contrary,
that firm was expressly bound not to " sell, mortgage,
rent, loan nor transfer any one of them." It cannot
well be said that the mortgagors were given the power to
sell provided they applied and obtained releases from the
mortgagee by paying the value of the cars to be sold. If
such releases were obtained, the power of sale would not

rest in any authorization from the mortgagee to sell for it; it would exist as an attribute of an unconditional title to the automobiles which the mortgagors had thus acquired. We think that the cases of *Biggs* v. *Evans* (*supra*) and *Smith* v. *Clews* (*supra*) are precise authority to the effect that the plaintiff was not estopped by its conduct from asserting title to the automobiles, under its mortgage, and to that proposition we adhere.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgment accordingly.