JANE ZENDMAN, Appellant, *v.* HARRY WINSTON, INC., Respondent.

Argued November 20, 1952; decided April 9, 1953.

*A. Aaron Raphael* and *Kenneth Carroad* for appellant. I. The evidence introduced before Special Term clearly established that the ring was delivered by defendant to Brand for the purpose of sale by Brand and that Brand had an unqualified power to sell. II. Defendant is precluded by its conduct from denying plaintiff's title. (*Barnard* v. *Campbell,* 55 N. Y. 456; *Island Trading Co.* v. *Berg Bros.,* 239 N. Y. 229.) III. The Factor's Act (Personal Property Law, § 43) validates the sale to plaintiff. (*Cartwright* v. *Wilmerding,* 24 N. Y. 521; *Freudenheim* v. *Gütter,* 201 N. Y. 94.) IV. The *Utica Trust & Deposit Co.* v. *Decker* case (244 N. Y. 340), relied upon by the Appellate Division as authority for its reversal of the judgment for plaintiff at Special Term, is wholly inapplicable. (*Smith* v. *Clews,* 114 N. Y. 190; *Biggs* v. *Evans,* [1894] 1 Q. B. 88.) V. The decision of Special Term was fully supported by the laws of New Jersey. (*Leatherbury* v. *Connor,* 54 N. J. L. 172; *Campbell Mfg. Co.* v. *Rockaway Pub. Co.,* 56 N. J. L. 678.)

*Abraham Lillienthal* and *Leon Finley* for respondent. I. Defendant was not estopped, by entrusting the ring to a dealer in jewelry, from asserting title to the ring, either under the law of New York or New Jersey. (*Utica Trust & Deposit Co.* v. *Decker,* 244 N. Y. 340; *Smith* v. *Clews,* 114 N. Y. 190; *Soltau* v. *Gerdau,* 119 N. Y. 380; *Barnard* v. *Campbell,* 55 N. Y. 456; *Nelson* v. *Wolf,* 4 N. J. 76; *Biggs* v. *Evans,* [1894] 1 Q. B. 88; *Island Trading Co.* v. *Berg Bros.,* 239 N. Y. 229; *Dows* v. *Kidder,* 84 N. Y. 121; *Parker* v. *Baxter,* 86 N. Y. 586; *Hutchison* v. *Ross,* 262 N. Y. 381.) II. No conduct of defendant misled plaintiff into purchasing the ring. Both plaintiff and defendant placed their trust in Brand and misplaced confidence does not act as a conduit of title. (*People* v. *Bank of North America,* 75 N. Y. 547.) III. Defendant's title to the ring is not impeached and there is no evidence that Brand had unqualified power to sell. (*Green* v. *Wachs,* 254 N. Y. 437.)

FULD, J. On November 28, 1947, plaintiff Jane Zendman bought a diamond ring for $12,500 at an auction held at the gallery of Brand, Inc., on the Boardwalk in Atlantic City, New Jersey. Harry Winston, Inc., a diamond merchant located in New York City, claims ownership of the ring.

Brand and Winston had done business together for years. It was the custom of Harold Brand, the owner and proprietor of Brand, Inc., to visit Winston's premises in New York several times a month and select articles that were later sold at the gallery in Atlantic City. In October of 1947, Brand chose the ring — later purchased by Miss Zendman — advising that he wished to show it to a customer, and, at his request, that one item was mailed to the gallery in New Jersey. Accompanying it was a memorandum, reciting that " the goods " were only for Brand's examination and that no title was to pass " until you have made your selection, notified us of your agreement to pay the indicated price [$11,000] and we have indicated our acceptance thereof by sending to you a bill of sale."

Upon the receipt of the ring, Brand placed it in one of its public show windows, such display being with the knowledge and acquiescence of the owner Winston. And there the ring remained on display until, more than a month later, it was put up at auction and, after some bidding, " knocked down " and sold to plaintiff for $12,500. She received a bill of sale from Brand and knew nothing about the written memorandum or the circumstances under which Brand had obtained possession. Sometime in January, 1948, Winston discovered that Brand had sold the ring to plaintiff and, on February 2d, demanded its return. On the following day, an involuntary petition in bankruptcy was filed against Brand.

The record established that delivery of merchandise " on memorandum " similar to that here involved, had been the regular course of dealing between Winston and Brand for some years, and " hundreds " of such memoranda were found in Brand's files. Every week or so — evidence, admitted without objection, disclosed — one of Winston's salesmen and officers, Raticoff, would visit Brand's gallery, and, after checking items that had been sent to Brand, would settle Winston's account, collecting either cash or Brand's check or the checks of those customers who had bought Winston articles.

The court at Special Term, in the exercise of its discretion declined to grant a declaratory judgment (Rules Civ. Prac. rule 212), but rendered judgment in favor of plaintiff on defendant Winston's counterclaim for replevin. Finding that plaintiff had purchased the ring for full value and in entire good faith the court proceeded to hold — in reliance upon the sales act provisions of New Jersey (N. J. Stat. Ann., § 46:30–29) — that Winston had, by its conduct, " precluded " itself " from denying the seller's authority to sell." Upon appeal, the Appellate Division, deciding that there was no basis for an " estoppel," reversed and directed judgment for defendant.

It is the law of New Jersey — the place where the sale to plaintiff occurred and where the ring was then located — that governs our decision (see *Hutchison* v. *Ross,* 262 N. Y. 381, 389–390; see, also, *Weissman* v. *Banque De Bruxelles,* 254 N. Y. 488, 492; Goodrich on Conflict of Laws [3d ed.], p. 470), and to the law of that state we turn.[1]

It is our judgment that, by reason of the pertinent New Jersey provision (N. J. Stat. Ann., § 46:30–29) — identical in wording with section 23 of the Uniform Sales Act, as well as section 104 of the New York Personal Property Law — defendant is precluded on the principle " of estoppel or something akin to estoppel " (2 Williston on Sales [Rev. ed., 1948], § 311, p. 242), from claiming that Brand was not authorized to sell the ring to plaintiff " Subject to the provision of this chapter," the statute recites " where goods are sold by the person not the owner thereof and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the

---

1. The trial court also opined that, if the law of New York applied, plaintiff was further protected by the New York Factor's Act (Personal Property Law § 43), which provides that an agent "intrusted with the possession of any merchandise for the purpose of sale * * * shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person, for the sale or disposition of the whole or any part of such merchandise". Since New Jersey has no comparable provision, it is unnecessary to determine whether the facts support the trial court's conclusion that, despite the language in the memorandum, Brand was, within the meaning of the Factor's Act, an agent of Winston "intrusted with the possession" of the ring "for the purpose of sale" so as to give validity to Brand's subsequent sale of it to plaintiff.

goods than the seller had, *unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."* (Emphasis supplied.)

Only recently, the Supreme Court of New Jersey, in *Nelson* v. *Wolf* (4 N. J. 76), for the first time had occasion to consider that provision, and, strangely enough, in a case also involving Brand. The defendant had consigned a diamond ring to Brand upon a memorandum similar to the one employed by Winston. Some time later, Brand borrowed $4,000 from plaintiff, delivering the ring and other pieces of jewelry as collateral security. Some time later, plaintiff purchased the ring from Brand in consideration of the cancellation of the loan, but, as the court explicitly pointed out, " no bill of sale was ever given him for the ring nor was the transaction otherwise evidenced in writing " (4 N. J., at p. 78). The plaintiff subsequently redelivered the ring to Brand, likewise upon memorandum. A few months later, Brand, upon defendant's demand, turned the ring over to him. In the action thereupon brought by plaintiff against defendant for conversion, the court held that plaintiff could not succeed, since Brand had neither title to the ring nor authority to sell it and defendant was not prevented from setting up his own title.

Observing that there were " no decisions in New Jersey construing this particular section of the Uniform Sales Act," the court remarked that " it has become well established in other jurisdictions that have adopted the Act that, although possession alone is not enough to create an estoppel, the owner may be estopped from setting up his own title and the lack of title in the vendor as against a *bona fide* purchaser for value where the owner has clothed the vendor with possession and other indicia of title, 46 *Am. Jur., Sales,* § 463." (4 N. J., at pp. 79–80.) In holding that defendant in the case before it was not precluded from denying the seller's authority to sell, the New Jersey court explicitly noted (1) that Brand had " no apparent authority to sell *unless* it be to an innocent purchaser in the regular course of business ", and the " plaintiff in the instant case is clearly not such a *bona fide* purchaser in the regular course of business "; (2) that " plaintiff never received any bill of sale or other written evidence of the pur-

chase of the ring by him "; (3) that he "was not the type of customer who came into the shop of Brand, Inc., in the ordinary course of business " (4 N. J., at pp. 80–81); and (4) that plaintiff had had dealings with Brand that were "unsatisfactory * * * and accordingly he was put on notice that * * * [Brand's] title * * * might be questionable " (4 N. J., at p. 81).

The factors stressed by the New Jersey court as decisive go far toward demonstrating that, in the case at hand, defendant Winston is precluded, under that state's law, from denying Brand's authority to sell. In sharp contrast with the facts of the *Nelson* case, plaintiff Zendman was an innocent purchaser at an auction sale conducted by Brand in the regular course of its business of auctioneering; she paid full value and received a written bill of sale acknowledging purchase of the ring; and there was nothing to put her on notice that Brand's title or authority to sell might be questionable. But, even more important than such differences, there are here operative facts — not present in *Nelson* v. *Wolf* — beyond the mere entrusting of possession. And, since the New Jersey court indicated its adoption of the current of authority in other jurisdictions, these added facts, so established case law indicates, serve as cogent predicate for estoppel.

Generally, we seek a proper balance between the competing interests of an owner who has entrusted his property to another for purposes other than sale, and of an innocent purchaser who has in good faith bought that property from the latter without notice of the seller's lack of title or authority to sell. In resolving this conflict, the courts have evolved certain principles " akin to estoppel " (2 Williston, *op. cit.*, § 311, p. 242), based on the maxim that " As between two innocent victims of the fraud, the one who made possible the fraud on the other should suffer." (*Island Trading Co.* v. *Berg Bros.*, 239 N. Y. 229, 233.)

Thus, on the one hand, it is settled that simply delivering possession of an article of property to another as depository, pledgee or agent " is clearly insufficient to preclude the real owner from reclaiming his property, in case of an unauthorized disposition of it by the person so intrusted. (*Ballard* v. *Burgett*, 40 N. Y. R., 314.) " (*McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325,

330.) " Neither is it sufficient, to work an estoppel, that the person to whose possession the owner intrusts chattels is a dealer in similar merchandise." (*Utica Trust & Deposit Co.* v. *Decker,* 244 N. Y. 340, 348; see, also, 2 Williston, *op cit.,* §§ 310–316.)[2] Nor, finally, is an estoppel created merely by the addition of the circumstance " that the possessor of the chattel is authorized by the owner to exhibit the same for the purpose of obtaining offers of purchase." (*Utica Trust & Deposit Co.* v. *Decker, supra,* 244 N. Y. 340, 349; see, also, 2 Williston, *op. cit.,* § 315.)

On the other hand, it is equally settled that " but slight additional circumstances may turn the scale " against the true owner (2 Williston, *op. cit.,* § 315, p. 249) and estop him from asserting title against one who has purchased the property in good faith. (See, e.g., *Calais Steamboat Co.* v. *Van Pelt's Admr.,* 2 Black. [U. S.] 372; *Kirsch* v. *Provident Loan Soc. of N. Y.,* 189 Misc. 898, 914–915; *Heath* v. *Stoddard,* 91 Me. 499; *O'Connor* v. *Clark,* 170 Pa. 318.) As this court noted, some eighty years ago, in *McNeil* v. *Tenth Nat. Bank* (*supra,* 46 N. Y. 325, 329), the rule that a vendor can convey no greater title to property than he possesses " is a truism, predicable of a simple transfer from one party to another where nó other element intervenes." However, continued the court, " It does not interfere with the well-established principle, that where the true owner holds out another, or allows him to appear, as the owner of, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence he caused or allowed to appear to be vested in the party making the conveyance. (*Pickering* v. *Busk,* 15 East, 38; *Gregg* v. *Wells,* 10 Adol. & El.,

2. As Williston has observed, " It is enough to put the typical case of sending a watch for repair to a jeweler who habitually sells watches, to make it clear that such an intrusting will not, without more, prevent the owner from asserting his title against a purchaser ". (2 Williston, *op. cit.,* § 314, p. 246.)

90; *Saltus* v. *Everett,* 20 Wend., 268, 284; *Mowrey* v. *Walsh,* 8 Cow., 238; *Root* v. *French,* 13 Wend., 570.) ''

Adopting that principle, the courts have generally acknowledged that '' The rightful owner may be estopped by his own acts from asserting his title. If he has invested another with the usual evidence of title, *or an apparent authority to dispose of it,* he will not be allowed to make claim against an innocent purchaser dealing on the faith of such apparent ownership.'' (*Smith* v. *Clews,* 114 N. Y. 190, 194; emphasis supplied. See, also, 46 Am. Jur., Sales, § 463, cited in *Nelson* v. *Wolf, supra,* 4 N. J. 76, 80.) And, as was observed in *Saltus* v. *Everett* (20 Wend. 267, 281), decided by the old Court for Correction of Errors, '' the owner may lose the right of recovering his goods against purchasers, by exhibiting to the world a third person as having power to sell and dispose of them; and this, not only by giving a direct authority to him, but by conferring an implied authority. Such an authority may be implied by the assent to and ratification of prior similar dealings, so as to hold such person out to those with whom he is in the habit of trading, as authorized to buy or sell. It may be inferred from the nature of the business of the agent, with fit accompanying circumstances.''

Such '' fit accompanying circumstances '' are here present; the trial court was fully justified in holding that defendant was precluded from denying Brand's authority to sell. For more than a month, defendant acquiesced in Brand's public display of the ring unsegregated from other wares properly up for sale. Defendant's officer, Raticoff, knew of the ring's display, and yet no effort was made to inform the public that it was exhibited only to solicit offers and not for immediate sale. Moreover, as noted above, the evidence revealed a regular course of dealing between Brand and Winston regarding jewelry received '' on memorandum '', under which Winston appears to have accepted either Brand's check or money or customers' checks for sales made by Brand, without insisting on compliance with the limitations of the memoranda. Winston was thus responsible for the appearance of a general, unrestricted authority in Brand to sell items received on such memoranda. And, relying on Brand's apparent authority to sell the diamond, plaintiff bid at the auction sale and bought the ring.

Nor can there be any question that such reliance on plaintiff's part was reasonable, if not, indeed, inevitable. In the eyes of the public, auction galleries exist solely to sell merchandise, and the public thus regards the entrusting of goods to an auction house as tantamount to the entrusting of the power to sell such goods. In the words of Lord ELLENBOROUGH, uttered more than a century ago, " if one send goods to an auction-room, can it be supposed that he sent them thither merely for safe custody?" (*Pickering* v. *Busk,* 15 East 38, 43.) Accordingly, he concluded, " Where the commodity is sent in such a way and to such a place as to exhibit an apparent purpose of sale, the principal will be bound, and the purchaser safe " (15 East, at p. 43). Even if, as Williston observes (*op. cit.,* § 314, pp. 245–246), there are implications in Lord ELLENBOROUGH's remarks that " go beyond the law ", it is enough to note that the additional facts and circumstances here present furnish firm support for our conclusion.[3]

Further confirmation, if needed, is found in analogous cases from other states. They involve the rights of a purchaser, from an automobile dealer, of a car, subject to a trust receipt or a contract of conditional sale or a chattel mortgage held by a bank or finance company. The operative document materially limited the dealer's authority to sell, usually by prohibiting a sale unless the written consent of the bank or finance company was first obtained. Despite that limitation, the latter was held estopped from asserting its title or lien as against a bona fide purchaser, if it had in past transactions acquiesced in the dealer's making sales, without complying with the prescribed restriction. The estoppel was largely predicated on the act of the owner or mortgagee which, the courts ruled, cloaked the dealer — so far as the public was concerned — with authority to sell the property. (See, e.g., *Jones* v. *Commercial Investment Trust,* 64 Utah 151; *Gramm-Bernstein Motor Truck Co.* v. *Todd,*

---

3. We note that the Official Draft of the Proposed Uniform Commercial Code, representing the judgment of leading experts in the field of sales law, goes far beyond the case under consideration. It provides in blanket terms that " Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." (Proposed Uniform Commercial Code, Official Draft [1952], § 2-403, subd. [2]; see, also, Comment to said section, pp. 147–148.)

121 Wash. 145; *Denno* v. *Standard Acceptance Corp.*, 277 Mass. 251; *Daas* v. *Contract Purchase Corp.*, 318 Mich. 348; *Atlantic Discount Corp.* v. *Young*, 224 N. C. 89; see, also, 2 Williston, *op. cit.*, § 316, pp. 251–252; cf. *Coffman* v. *Citizens' Loan & Investment Co.*, 172 Ark. 889; *Finance Corp. of N. J.* v. *Jones*, 98 N. J. L. 165; *Commercial Motors Mtge. Corp.* v. *Waters*, 280 Pa. 177.)

The Appellate Division in the present case regarded *Utica Trust & Deposit Co.* v. *Decker* (*supra*, 244 N. Y. 340) as decisive against plaintiff's claim of estoppel. That case, however, is distinguishable. Several automobile dealers gave a chattel mortgage to plaintiff bank as security for the financing of four cars which they had purchased. There had been similar prior transactions between the parties, and in each instance the mortgage prohibited the dealer from selling or transferring any car — though on exhibition in their premises — until it was released from the mortgage. The defendant Decker purchased one of the cars in the regular course of business and without knowledge of plaintiff's mortgage. We did no more than hold that plaintiff, having *duly recorded its mortgage*, could recover the car from Decker and was not estopped by allowing exhibition of the car for the purpose of obtaining offers of purchase. Apart from the fact that it dealt, not with a secret agreement as here, but with an instrument publicly recorded in accordance with statute, the case is further distinguishable upon the ground, there emphasized (p. 345), that " It was not conceded or proven that any cars so covered by mortgages had been sold by O'Donoghue and Wetzel [the dealers] without their first having obtained releases from the mortgagee, as provided in the mortgages." Quite evidently, therefore, our decision in *Decker* does not deny operative effect to evidence of prior dealings between the parties, clearly manifesting a past disregard for limitations contained in the pertinent instrument. (Cf., also, *Smith* v. *Clews*, 105 N. Y. 283; *id.*, *supra*, 114 N. Y. 190, 195–196.)

We realize, of course, that " The law takes into account not simply the deception of the subsequent buyer by the appearance of title in the possessor of the goods, but also whether this appearance of title was created by the original owner for a pur-

pose so essential and proper that the original title must be protected irrespective of the injury to the subsequent buyer '' (2 Williston, *op. cit.*, § 312, p. 243). The task in each case is, therefore, to balance the probability of deception with the necessity for adopting the particular mode of entrusting chosen. In this case, we fail to see how defendant's mode of operation is '' so essential '' to the conduct of its business as to warrant placing upon an innocent purchaser the burden and consequences of the very fraud which defendant made possible.

An owner must be fully aware of the potentialities for fraud created when, for purposes of sale, he entrusts merchandise to a retail dealer, regularly engaged in selling such goods, and the dangers are many times multiplied if that dealer happens to be an auctioneer. It ill behooves the owner to complain if he is not permitted to rely upon his private and secret agreement, when he himself has failed to require adherence to its terms and has thus become responsible for the dealer's apparent authority to sell.

The judgment of the Appellate Division should be reversed and that of Special Term affirmed, with costs in this court and the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROESSEL, JJ., concur.

Judgment accordingly.