Harold Tessler, J.
Motion by plaintiff for summary judgment.
*2 The complaint contains two causes of action. The first, which is asserted against defendant Motor Wholesalers, Inc., alone, is to recover the sum of $1,875 as damages allegedly resulting from said defendant’s breach of its warranty that a 1959 Ford automobile which it had sold to plaintiff was free of any lien or incumbrance when, in fact, said vehicle, without plaintiff’s knowledge or consent, was seized by one of the remaining defendants under a claimed chattel mortgage. The second cause of action, which is asserted against defendants Mandia Motors, Inc., and John Mandia alone, is to recover from them damages in the same amount for the alleged conversion of said vehicle.
The answer of Motor Wholesalers contains general and specific denials and one affirmative defense, to wit, that it was an innocent purchaser for value of the 1959 Ford and had full and marketable title to that vehicle.
The answer of defendant Mandia Motors, Inc., contains general and specific denials and one .affirmative defense, to wit, that on or about February 17, 1960 it duly executed a chattel mortgage to Universal G. I. T. Credit Corporation; that thereafter possession, but no indicia of ownership, of the automobile was given to Phillips and/or Bruce Motors; that such possession thereafter became illegal for failure of clearance of the check given in payment of - the automobile; and that plaintiff is not a bona fide purchaser for value.
The answer of John Mandia also contains general and specific denials and one affirmative defense, to wit, that on or about February 17, 1960 Mandia Motors duly executed a chattel mortgage to the Universal C. I. T. Credit Corporation in the sum of $1,750 and that said mortgage was duly filed. Subsequently, Universal duly assigned said chattel mortgage to John Mandia which assignment was duly filed by him. Demand for payment having been made and payment' refused, he repossessed the vehicle. The defense is concluded with the statement that John Mandia’s possession of the automobile is lawful and that plaintiff is not a bona fide purchaser for value.
The affidavits originally submitted on this motion for summary judgment disclose the following facts. Plaintiff is an authorized Ford dealer, but also sells used cars at retail. On April 20, 1960 it purchased a 1959 Ford from Motor Wholesalers and paid therefor the sum of $1,875. Nothing was said about any lien, incumbrance or mortgage on said automobile. On June 9, 1960, the automobile was seized and taken from plaintiff’s lot by an agent of Mandia Motors or John Mandia, without plaintiff’s knowledge or consent. If Motor Wholesalers *3 had full and marketable title to that automobile, then either or both of the remaining defendants are liable to the plaintiff. If Motor Wholesalers did not have such title, then it is liable to the plaintiff under its warranty.
The affidavit submitted on behalf of Motor Wholesalers repeats its defense of full and marketable title and states that at the time of the sale of the vehicle defendants Mandia had no valid lien against it and are solely responsible to the plaintiff. It is also stated that no chattel mortgage Avas filed by said defendants as against the vehicle in question until June 10, 1960, which Avas almost two months after the sale and on the day folloAving repossession of the vehicle.
In their original affidavit submitted on this motion, defendants Mandia repeated, in substance, the matters contained in their respective answers and, without specifying any dates, that after John Mandia received the assignment of the chattel mortgage from Universal-he notified the plaintiff that there was a lien against the automobile, that payments were due and owing on the mortgage and that plaintiff did not have proper title to the automobile.
The paucity of detail in that opposing affidavit of defendants Mandia, which affidavit was made by their attorney, prompted the court to hold the motion in abeyance pending the submission of additional factual proof.
In his supplementary opposing affidavit John Mandia states in substance as folloAvs. The repossession of the automobile Avas made by him alone; Mandia Motors played no part whatever therein. On February 8, 1960, as president of Mandia Motors, he executed a chattel mortgage statement with Universal, pursuant to section 230-c of the Lien Law. A copy of that statement is attached to said affidavit, is in full compliance Avith subdivision 2 of section 230-c and shows that it was duly filed on February 25, 1960. On February 17, 1960 Mandia Motors executed a chattel mortgage in favor of Universal on three motor vehicles, including the 1959 Ford in question. On April 20,1960 one Owen Phillips and/or Bruce Motors offered to buy this automobile. Since the credit of either Avas unknown, a check Avas given to secure payment, but Motor Vehicle Form Number 50 Avas Avithheld from Phillips until the check cleared. The check did not clear. In the meantime, John Mandia learned that the automobile had been transferred to Motor Wholesalers. He immediately called that defendant and notified it to stop payment on any check given to secure payment of that vehicle. Motor Wholesalers refused to comply with that request and informed him that the automobile had been transferred to the *4 plaintiff. Defendant thereafter called the plaintiff and notified it to stop payment on any check given to secure payment of that automobile. No dates for any of these alleged conversations are set. forth. Thereafter John Mandia purchased the chattel mortgage on the automobile from Universal and duly filed that assignment. A copy of the mortgage is attached to the affidavit and shows that it was filed on June 10, I960. John Mandia states that section 230-e of the Lien Law controls the determination of this controversy.
In its supplementary opposing affidavit Motor Wholesalers states that “It is claimed by Phillips that such form MV 50 was issued by Mandia Motors to Bruce Motors and/or Phillips. ’ ’ No affidavit to that effect, however, is submitted by either Phillips or Bruce Motors. Motor Wholesalers does not disclose precisely when nor from whom it purchased the 1959 Ford. It simply takes the position, apparently, that since no chattel mortgage was on file at the time it purchased the automobile, it was a bona fide purchaser for value. It also contends that if it was bound by the chattel mortgage statement filed pursuant to section 230-c of the Lien Law, so, too, was the plaintiff.
Plaintiff’s supplementary reply affidavit also emphasizes the fact that the chattel mortgage was not filed until June 10, 1960, and expresses the opinion that John Mandia should be held liable to it.
The affidavits of plaintiff and Motor Wholesalers are silent as to the claim of John Mandia that he informed them of his lien and of the absence of title in either Phillips or Bruce Motors. Plaintiff, of course, can fall back on the warranty it received from Motor Wholesalers. The latter, however, has failed to submit any definitive proof as to whether it purchased the automobile from Phillips or Bruce Motors and, of even more significance, as to the indicia of ownership, if any, it relied upon. This lack of proof alone would seem to preclude a summary disposition of this controversy. If Phillips or Bruce Motors had mere possession of the vehicle, Motor Wholesalers would not be able to prevail over the chattel mortgage, though unfiled (see Utica Trust & Deposit Co. v. Decker, 244 N. Y. 340, 348-349 ; Zendman v. Harry Winston, Inc., 305 N. Y. 180, 186-187 ; Eager, Chattel Mortgages and Conditional Sales [Perm, ed.], §§ 140, 142, 499). If, however, Phillips or Bruce Motors was vested with indicia of ownership as well as possession, another result may obtain, provided that Motor Wholesalers was otherwise without notice of the actual defect in title (cf. Rand’s Discount Co. v. Universal C. I. T. Credit Corp., 10 A D 2d 240).
*5 So far as section 230-e of the Lien Law is concerned, the court is of the opinion that it supports the position taken by defendants Mandia. That statute (prior to the 1960 amendments which are inapplicable to the instant controversy) authorizes a motor vehicle dealer to file a chattel mortgage statement in lieu of filing the mortgage and with the same legal effect (subds. 1, 4, 7) except as to a “ buyer in the ordinary course of trade ” who purchases ‘ from a dealer any motor vehicle * * * covered by any such chattel mortgage * * * for new value, and who acts in good faith ” (subd. 6; see, also, Eager, op. cit. supra [1960 Supp.], § 499-a). “ The term ‘ buyer in the ordinary course of trade however, “ does not include * * * another dealer in motor vehicles ” (subd. 6). And both plaintiff and Motor Wholesalers are dealers in motor vehicles. As between them, however, plaintiff has the benefit of the warranty it received from Motor Wholesalers.
The bar to disposing of this motion on the basis of section 230-c is twofold: first, a defense under that section has not been pleaded; secondly, the precise circumstances under which Motor Wholesalers acquired its title, if any, to the vehicle have not been set forth.
The defenses of defendants Mandia, as they presently stand, plead the priority of the chattel mortgage executed on February 17, 1960. But that mortgage, which was not filed until June 10, 1960, would be no defense were it not for the filed chattel mortgage statement and such statement is not even adverted to in the defenses. True, summary judgment must be denied if papers disclose the existence of a meritorious defense, though unpleaded (Curry v. Mackenzie, 239 N. Y. 267, 272), but summary judgment may not be granted on the basis of such a defense (Krohn v. Steinlauf, 11 A D 2d 695).
Furthermore, Motor Wholesalers may be able to establish that it took title to the vehicle from a ‘ ‘ buyer in the ordinary course of trade ’ ’ and thus succeeded to the protection afforded such a buyer under the statute. In view of the foregoing the motion is in all respects denied.