ALBERT R. TUMBER, IND. & T/A AAA MACHINERY CO., PLAINTIFF, v. AUTOMATION DESIGN & MFG. CORP., DEFENDANT.

Superior Court of New Jersey
Law Division

Decided August 2, 1974.

*Mr. Joseph J. Solon, pro se.*

*Mr. Leon S. Wolk* for defendant.

VAN TASSEL, J. C. C., Temporarily Assigned. This case concerns the sale of goods by a lessee of the owner to one who now claims good title by reason of the entrustment provisions of *N. J. S. A.* 12A:2–403 (2) and the doctrine of estoppel. Plaintiff-owner relied on his original title to the goods and seeks their return. In the alternative, he sues for their reasonable value.

In 1967 Joseph J. Solon, the stipulated real party in interest, trading as AAA Machinery Co. (AAA) along with his brother-in-law Albert R. Tumber, purchased certain machinery from S. J. Dolce & Co., Inc., a Long Island corporation, which together with Dolce-Helix, became a division of Roto American Corp. Payment for such equipment was made by Donlon Ventures, Inc., an investment company in which Solon and Tumber were partners. Title to these goods was placed in the name of AAA by an assignment from Solon.

As marketing and sales agent for AAA, Solon contracted to supply machinery to Roto American Corp. (R. A. C.), a corporation in the business of manufacturing and selling packaging equipment. R. A. C. owned its own building located at 560 Winters Avenue, Paramus, N. J., subject to New Jersey Bank & Trust Co.'s mortgage lien on this and all

after-acquired assets. R. A. C. permitted Solon, S. J. Dolce & Co., Inc. and others to occupy and use its office facilities and leased plant facilities and machinery to Jyron Co. It also leased a portion of the premises to defendant Automation Design & Mfg. in 1968, discussed hereinafter.

In May 1966 R. A. C. began to experience financial difficulty which required refinancing and liquidation of assets. Roto American Sales Corp. (R. A. S. C.) was formed and began to act as R. A. C.'s agent in this regard on January 18, 1967 when it took an assignment of all of R. A. C.'s rights, title and interests by an agreement procured through "Joseph J. Solon, Agent." James Talcott, Inc. assumed the refinancing and received in return a security interest in R. A. C.'s accounts receivable. This security interest was then assigned to Donlon Ventures, Inc., which became affiliated with R. A. S. C. in May 1967. By this time R. A. C. showed a negative net worth. AAA assisted by purchasing R. A. C. equipment and leasing it back to R. A. C. for one year at 7½% of the purchase price, with an option in R. A. C. to repurchase thereafter at its original selling price.

In June 1967 the subject equipment was entrusted to R. A. S. C. AAA through Solon leased a Sigma Radial Drilling Machine, Type UR–4, serial number 6616; a Le-Blond Regal Engine Lathe, serial number D–9041, and a Bridgeport Milling Machine, Model J, serial number J–26384, to R. A. S. C. The leasing arrangement was again one whereby AAA would receive 7½% of the price, representing an annual rental fee with an option in R. A. S. C. to purchase after one year. Solon testified that the lease was never completed and that he left the equipment with R. A. S. C. with the understanding that he would sell the equipment to a willing buyer some time in the future.

On September 26, 1967 R. A. C. filed a voluntary petition in bankruptcy which was confirmed on Oct. 31, 1967. Thereafter, pursuant to a court order, the January 18, 1967 asignment between R. A. C. and R. A. S. C. was cancelled and deemed void, the result of which was that R. A. S. C., a

closely held corporation (the stock of which was owned in equal parts by Herbert Frutkin and Louise M. Solon, wife of Joseph Solon) became owner of approximately two-thirds of the outstanding shares of Roto American Corp.

The testimony disclosed that the formation of R. A. S. C. was an emergency measure designed to save the failing R. A. C. It would receive income from the sale of its stock, *i. e.,* the Walton contract and Seigfried contract, and filter it back into R. A. C. to keep it afloat. In December 1967 and January 1968 it acquired two companies, Nordam, Inc. and S. J. Dolce & Co., Inc. which were charted to be assigned to R. A. C. R. A. S. C. was also used as a vehicle to compromise claims of creditors. The testimony also reveals that Solon acted as a "free-lance" agent and was inextricably interwoven in these transactions.

In April 1968, through Solon's promptings and assistance, Carl Frank, the president of Automation Design & Mfg. Corp. (Automation Design) arranged to lease a portion of R. A. C.'s building. Frank knew Solon when Frank was chief engineer of R. A. C. in charge of research and development. At that time he constantly sought Solon's advice. Frank testified that he rented space from R. A. C. in April 1968, and that Automation Design took possession thereof in May 1968 and remained there until April 1970 when it moved to Norwood, N. J. He testified further that in November and December 1968 Dolce of S. J. Dolce & Co., Inc. and Billington, the president of R. A. S. C., offered to sell four machines to Automation Design. Frank had previously discussed with Solon the sale of various machines in August or September 1968 but failed to agree on a price. However, as a result of discussions with Dolce and Billington, he purchased the machines. A Leland Gifford Drill Press was purchased by check dated November 26, 1968, made payable to AAA. This piece of machinery is not in issue. Three other machines were purchased by two checks drawn "Pay to the order of cash" and endorsed with the notation "For payroll

purposes" and "For payroll — cash." The checks were deposited and honored the same day as issued.

The first of the two subject transactions occurred on December 6, 1968 when Dolce and Billington offered to sell the Sigma Radial Drill. Frank called John Sweeney at New Jersey Bank, the lien holder of record, and discussed the releasing of the machine from its mortgage. (AAA had made no recording of its ownership.) As a result of this conversation Frank issued a $3,750 check payable to cash and purchased the equipment. In return he received an R. A. S. C. invoice which indicated:

> Received payment in full Dec. 6, 1968
> Check No. 235 — payable to Cash.
> In accordance with direction of Mr. Herbert Frutkin, Chairman of the Board, the above item is certified to be free and clear of all encumbrances.
>
> (signed)
> Herbert Billington
> President

In addition, Frank testified that "on the very same day of the purchase" he spoke to Frutkin, who at that time was the sole owner of all of R. A. S. C. stock, and as a result of this conversation he was convinced that Solon did not own the machine.

The second purchase occurred on December 13, 1968 when Dolce (and Billington) offered to sell a LeBlond Regal Lathe and a Bridgeport Milling Machine. Frank purchased this equipment with a $3,500 check, again payable to cash. He explained that this was the "same type of deal." Dolce and Billington were pressed for money to meet Friday's payroll expenses. To accommodate them he gave a cash check. This time he received AAA invoices as receipts.

Both invoices were received by Automation Design a week later on December 20, 1968. On invoice No. 102–R covering the Bridgeport Milling Machine there was typed "Payment received in full," with a notation "Roto" in the lower left-hand corner. Invoice No. 502–D covering the LeBlond

Regal Engine Lathe showed a "Balance due $200" with a notation "Dolce-Helix" typed in the lower left-hand corner of this receipt.

The court finds these notations on the AAA invoices significant since they acknowledge the seller of the respective pieces of equipment as associated with AAA. They are indicative of the agency relationship which existed in Solon throughout and are entirely consistent with his wish that these pieces of equipment be sold at some time in the future.

In the latter part of 1968 the Internal Revenue Service arrived at the R. A. C. building to tag all assets subject to its lien. Due to Frank's insistence, all tags were removed from these pieces of equipment. On December 29, 1968 Albert Tumber wrote to the I. R. S. explaining that the goods were his but were being used by Dolce-Helix Corp. with the prospect of sale to R. A. C.

On November 2, 1970, almost two years later, Melvin A. Albert, attorney for AAA, wrote to Automation Design in Norwood, N. J. demanding the return of the Sigma Radial Drilling Machine. Significantly, although for some unexplained reason, the demand was addressed only to this machine. On November 9, 1970 Automation Design denied AAA's claim of ownership. Thereafter AAA instituted suit for the return of the three pieces of equipment.

N. J. S. A. 12A:2-403, "Power to Transfer; Good Faith Purchase of Goods; 'Entrusting,'" provides in pertinent part:

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

The phrase, "merchant who deals in goods of the kind," has been construed to mean one who is regularly engaged in

selling goods of the kind. *Toyomenka, Inc. v. Mount Hope,* 432 *F.* 2d 722 (4 Cir. 1970). A " 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the owner-ship rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawn broker. * * *" *N. J. S. A.* 12A:1-201(9).

In *Mattek v. Malofsky,* 42 *Wis.* 2d 16, 165 *N. W.* 2d 406 (Sup. Ct. 1969), the court found that a merchant buy-ing from another merchant may be a buyer in the ordinary course of business if he meets the increased standards of good faith required in the case of a merchant. He must be "honest in fact" and must observe reasonable commercial standards of fair dealing in the trade. *N. J. S. A.* 12A:2-103(1)(b) ; *cf. N. J. S. A.* 12A:1-201(19). Additionally, he is charged with the knowledge and skill of merchants. *N. J. S. A.* 12A:2-104(3).

In *Balon v. Cadillac Automobile Co. of Boston,* N. H., 303 *A.* 2d 194, 196 (1973), the court said that good faith under the Uniform Commercial Code is tested subjec-tively, that is, by whether that particular purchaser believed he acted in good faith, and by whether he was honest in what he did. In this regard the court finds that Frank did act in good faith. He purchased the equipment only after rea-sonable assurances of title and in the belief that Solon did not own the equipment. However, his good faith alone is not sufficient to elevate him to the status of a buyer in the ordi-nary course. His seller, R. A. S. C., by reason of this iso-lated transaction, did not meet the standards of a "merchant dealing in goods of the kind," nor was his failure to request additional proof of ownership a "commercially reasonable" approach to this purchase. Thus he cannot invoke the pro-tections of *N. J. S. A.* 12A:2-403(2). *Mattek v. Malofsky, supra;* compare *Raymond Car Sales, Inc. v. Motor Whole-sales, Inc.,* 28 *Misc.* 2d 1, 211 *N. Y. S.* 2d 286 (Sup. Ct. 1961) ; *Independent News Co. v. Williams,* 293 *F.* 2d 510 (3

Cir. 1961), and *Weisel v. McBride,* 191 *Pa. Super.* 411, 156 *A.* 2d 613 (Super. Ct. 1959).

Although one may not be a buyer in the ordinary course of business as defined in the Uniform Commercial Code, he may yet be a good faith purchaser for value, *Sherman v. Roger Kresge,* 67 *Misc.* 2d 178, 323 *N. Y. S.* 2d 804 (Cty. Ct. 1971) who may enjoy the protection of pre-Code common law estoppel. *Toyomenka, Inc. v. Mount Hope Finishing Co., supra; N. J. S. A.* 12A:1–103. See also 10 *Boston College Indust. & Commerc. L. Rev.* at 46, fn. 29. In this case the operative facts suggest the universally adopted maxim that as between two innocent victims of fraud, the one who created the circumstances which made the wrongful act possible must suffer the loss. *Zendman v. Harry Winston, Inc.,* 305 *N. Y.* 180, 111 *N. E.* 2d 871 (Ct. App. 1953); *Harmony Homes, Inc. v. Zeit,* 260 *So.* 2d 218 (Fla. D. Ct. App. 1972); *Ballard v. McBryde,* 275 *So.* 2d 464 (La. Ct. App. 1973); *Jordon v. Butler,* 182 *Neb.* 626, 156 *N. W.* 2d 778 (Sup. Ct. 1968).

AAA entrusted the machines to R. A. S. C. in 1967 under a lease arrangement which was never completed. It left them at the R. A. C. building anticipating their future sale, and acquiesced in Dolce's and Billington's use of the equipment. In 1968 Automation Design took occupancy in the same building and purchased the equipment after obtaining assurances of title from Dolce, Billington, Frutkin and John Sweeney at New Jersey Bank. For over a year the equipment had remained with R. A. S. C. (who had an option to purchase). Thereafter for two more years they remained with Automation Design. It was not until November 1970, some seven months after the latter moved to Norwood with the equipment, that a demand for any of the equipment was made. Under these circumstances the court finds that Frank acted in good faith and without notice. He had had successful dealings with the sellers in the past and was justified in altering his position in reliance on their apparent authority to act as sellers and agents for AAA (who

acknowledged these sales). The court therefore concludes that as between Frank and Solon, the latter was the one who made the wrongful act possible, and accordingly he should bear the loss by being estopped to assert his title. *Zendman v. Harry Winston, Inc., supra* and cases cited, *cf. Nelson v. Wolf,* 4 *N. J.* 76 (1950), and *Muir v. Jefferson Credit Corp.,* 108 *N. J. Super.* 586, 593–594 (Law Div. 1970) See also, *Cambridge Acceptance Corp. v. American Nat. Motor Inns, Inc.,* 96 *N. J. Super.* 183 (Ch. Div. 1967) aff'd 102 *N. J. Super.* 435 (App. Div. 1968), and *Arsen v. Director, Div. of Motor Vehicles,* 61 *N. J. Super.* 131 (Law Div. 1960).

There will be a judgment entered in favor of defendant for possession of the equipment on the main claim, and the relief requested in the counterclaim is denied.